**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL ANTHONY CARRETTA, Individually and on Behalf of All Others Similarly Situated,<br><br>        Plaintiff,<br><br>   v.<br><br>CROCS, INC., ANDREW REES, ANNE MEHLMAN, and SUSAN HEALY,<br><br>        Defendants. | Case No. _____<br><br>**CLASS ACTION**<br><br>**JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT FOR VIOLATIONS**
**OF THE FEDERAL SECURITIES LAWS**

     Plaintiff Michael Anthony Carretta ("Plaintiff"), by and through Plaintiff's counsel, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters, including the investigation of Plaintiff's counsel, which included, among other things, a review of Defendants' (defined below) United States Securities and Exchange Commission ("SEC") filings, wire and press releases published by Crocs, Inc. ("Crocs" or the "Company"), analyst reports and advisories about the Company, media reports concerning the Company, judicial filings and opinions, and other publicly available information. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## I.    NATURE OF THE ACTION AND OVERVIEW

     1.     This is a federal securities class action on behalf of a class of all persons and entities who purchased or otherwise acquired Crocs common stock between November 3, 2022, and October, 28 2024, inclusive (the "Class Period"), seeking to pursue remedies under Sections 10(b)

and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), and SEC Rule 10b-5, promulgated thereunder.

2.      Crocs, a Delaware corporation with its principal executive offices in Broomfield, Colorado, is a casual lifestyle footwear brand.  Crocs's common stock trades on The Nasdaq Global Select Market under the ticker symbol "CROX."

3.      In February 2022, Crocs completed its acquisition of HEYDUDE, a footwear brand focusing on casual, comfortable, and lightweight footwear.  As is relevant here, the Company reports HEYDUDE sales in two segments: direct-to-consumer ("DTC") sales; and wholesale sales (which include sales to major retailers).  Despite the fact that HEYDUDE was only acquired by Crocs in mid-February 2022, HEYDUDE accounted for approximately 25% of the Company's total revenues in 2022.

4.      During the Class Period, Defendants misled investors by concealing the fact that the strong revenue growth exhibited by the Company's HEYDUDE brand following its acquisition in February 2022, was largely driven by a conscious decision on the part of Crocs management to aggressively stock its third-party wholesaler pipeline with HEYDUDE products, regardless of the level of retail demand being experienced by those wholesalers.  Defendants pursued this overstocking strategy despite assurances to investors by Defendant Andrew Rees, the Company's Chief Executive Officer, that Crocs would not "play the game of forcing inventory into [wholesalers] and getting them overstocked."  As a result, unbeknownst to investors, the Company reported HEYDUDE revenue numbers in 2022 that were not indicative of actual retail demand for HEYDUDE shoes and, over the longer term, were entirely unsustainable.  Moreover, after the Company's retail partners began to destock this excess inventory, Defendants further misled

investors by concealing that waning product demand for HEYDUDE shoes would further impact the Company's financial results.

5.     Investors began to learn the truth about the nature and unsustainability of HEYDUDE's revenue growth on April 27, 2023, when Defendant Rees revealed during the Company's first quarter 2023 earnings call that much of HEYDUDE's revenue growth in 2022 was attributable to efforts to stock the Company's wholesale partners with HEYDUDE products and was not necessarily indicative of actual downstream retail sales.

6.     On this news, the price of Crocs common stock declined $23.46 per share, or nearly 16%, from a close of $147.78 per share on April 26, 2023, to close at $124.32 per share on April 27, 2023.

7.     On June 7, 2023, at an industry conference held by Robert W. Baird & Co. Incorporated, Defendant Rees provided additional detail regarding HEYDUDE's purported growth, explicitly informing investors that HEYDUDE's revenue growth was generated, in large part, by the Company's effort to stock HEYDUDE products with Crocs's major retailers. Specifically, Defendant Rees stated that these wholesale stocking efforts accounted for $70 million in revenue in the second quarter of 2022 (out of $162.5 million in HEYDUDE wholesale revenues) and $60 million in revenue in the third quarter of 2022 (out of $181.8 million in HEYDUDE wholesale revenues).  Additionally, Defendant Rees revealed that Crocs had intentionally made significant sales to the Company's major retail and wholesale partners, rather than gradually increasing third-party HEYDUDE inventory over several years to reflect actual retail demand for the product.  These statements flatly contradicted Defendant Rees' earlier assertions that Crocs would not overstock its wholesalers.

8.    On this news, the price of Crocs common stock declined $4.52 per share, or nearly 4%, from a close of $121.09 per share on June 7, 2023, to close at $116.57 per share on June 8, 2023.

9.    On July 27, 2023, Defendant Rees admitted that Crocs's deliberate overstocking accounted for approximately $220 million of HEYDUDE's $896 million in revenue for the period following the closing of the acquisition on February 17, 2022.  Defendant Anne Mehlman, the Company's Chief Financial Officer at the time, also announced that Crocs was reducing HEYDUDE's revenue growth guidance for the remainder of fiscal 2023, to a range between 14% and 18%—substantially lower than previous guidance revenue growth in the mid-20s—effectively acknowledging that much of HEYDUDE's purported growth was based upon Defendants' decision to overstock wholesalers.

10.    On this news, the price of Crocs common stock declined $17.50 per share, or nearly 15%, from a close of $119.80 per share on July 26, 2023, to close at $102.30 per share on July 27, 2023.

11.    On August 16, 2023, Williams Trading LLC ("Williams Trading") significantly decreased its price target on Crocs from $145 per share, to $113 per share, due to information its primary Crocs analyst had uncovered as a result of his discussions with several HEYDUDE wholesale accounts regarding wholesaler inventory levels and the pricing for HEYDUDE products.  Among other things, Williams Trading highlighted elevated HEYDUDE inventory levels at approved retailers and the "overabundance" of HEYDUDE products on Amazon.com at below suggested retail price.

12.     On this news, the price of Crocs common stock declined $3.79 per share, or nearly 4%, from a close of $97.80 per share on August 15, 2023, to close at $94.01 per share on August 16, 2023.

13.     On November 2, 2023, Crocs announced its financial results for the third quarter of 2023, and revealed that HEYDUDE's "[w]holesale revenues declined 19.4% to $146.5 million following prior year pipeline fill and as our wholesale partners were more cautious on at-once orders."  As a result of the prior overstocking of HEYDUDE's products, Crocs further slashed its 2023 HEYDUDE revenue growth guidance from between 14% and 18%, to between only 4% and 6% (even though HEYDUDE DTC sales continued to grow 14.6% during the quarter).   In connection with this announcement, Defendant Rees admitted that HEYDUDE "inventory was too high" and that the Company "is proactively lowering in-channel inventories" and "working with our strategic accounts to clean up that inventory and putting them in a strong sell-through and a more profitable position."

14.     On this news, the price of Crocs common stock declined $4.62 per share, or more than 5%, from a close of $87.41 per share on November 1, 2023, to close at $82.79 per share on November 2, 2023.

15.     Throughout the remainder of the Class Period, Defendants continued to downplay the impact of the Company's overstocking of third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE.  After the Company's retail partners began to destock this excess inventory, Defendants further misled investors by concealing that waning product demand would significantly exacerbate the negative impact on the Company's financial results. For example, during the Company's earnings call discussing its fourth quarter and full year 2023 results on February 15, 2024, Defendant Rees proclaimed that, based on third-party data, the

"HEYDUDE brand during 2023 gained [substantial] market share in the fashion casual category." Further, in discussing the excess inventory issue, Defendant Rees reassured investors that Crocs had "gone through the process of cleaning up our account base because [of] . . . too much inventory," adding further that its "strategic partners . . . are really bullish on the brand."

16.    On April 16, 2024, the Company announced its separation from Rick Blackshaw, Executive Vice President and Brand President for HEYDUDE.

17.    On this news, the price of Crocs common stock declined $2.68 per share, or approximately 2.2%, from a close of $123.36 per share on April 15, 2024, to close at $120.68 per share on April 16, 2024.

18.    Then, on October 29, 2024, investors learned more about HEYDUDE's prospects when the Company reported its financial results for the third quarter of 2024.  During the accompanying earnings call, Defendant Rees disclosed that HEYDUDE revenues fell below the Company's expectations and revealed that "HEYDUDE's recent performance and the current operating environment are signaling it will take longer than we had initially planned for the business to turn the corner."  Rees attributed HEYDUDE's struggles to "excess inventories in the market" and admitted that "we've made good progress, but frankly, not quite all the progress we want to make" in resolving the inventory issue.  Moreover, Rees admitted that "if you think about this sort of [20]22 into [20]23 timeframe, in retrospect, we absolutely shipped too much product[]," calling that decision "wrong" and highlighting that a lack of product demand exacerbated the issue.

19.    On this news, the price of Crocs common stock declined $26.47 per share, or approximately 19.2%, from a close of $138.05 per share on October 28, 2024, to close at $111.58 per share on October 29, 2024.

20.     This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose: (1) the nature and sustainability of HEYDUDE's revenue growth by concealing that 2022 revenue growth was driven, in large part, by the Company's efforts to stock third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE; (2) that as the Company's retail partners began to destock this excess inventory, waning product demand further negatively impacted the Company's financial results; and (3) that, as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

21.     As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's common stock pursuant to the revelation of the fraud, Plaintiff and other members of the Class (defined below) have suffered significant damages.

## II.     <u>JURISDICTION AND VENUE</u>

22.     Plaintiff's claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5.

23.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

24.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b), because Crocs is incorporated in this District.

25.     In connection with the acts, conduct, and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce,

including, but not limited to, the United States mails, interstate telephone communications, and the facilities of the national securities markets.

### III.   <u>PARTIES</u>

26.    Plaintiff, as set forth in the accompanying certification, incorporated by reference herein, purchased Crocs common stock at artificially inflated prices during the Class Period and suffered damages as a result of the violations of the federal securities laws alleged herein.

27.    Defendant Crocs is a Delaware corporation headquartered at 500 Eldorado Blvd., Building 5, Broomfield, Colorado, 80021.

28.    Defendant Andrew Rees is the Company's Chief Executive Officer and a Company Director.

29.    Defendant Anne Mehlman was the Company's Executive Vice President and Chief Financial Officer until June 3, 2024, and is the Company's Executive Vice President and Crocs Brand President since May 3, 2024.

30.    Defendant Susan Healy is the Company's Executive Vice President and Chief Financial Officer since June 3, 2024.

31.    Defendants Rees, Mehlman, and Healy are collectively referred to herein as the "Individual Defendants."

32.    The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of the Company's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, i.e., the market.  Each Individual Defendant was provided with copies of the Company's reports alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, each of the Individual Defendants

knew that the adverse facts specified herein had not been disclosed to, and/or were being concealed from, the public, and that the positive representations that were being made were then materially false and/or misleading.

33.    Crocs and the Individual Defendants are collectively referred to herein as "Defendants."

## IV.    SUBSTANTIVE ALLEGATIONS

### A.    Background

34.    Crocs is a Delaware corporation with its principal executive offices in Broomfield, Colorado.  Crocs is a casual lifestyle footwear brand and, in December 2021, the Company announced that it was planning to acquire privately held HEYDUDE for $2.5 billion.  HEYDUDE is a footwear brand focusing on casual, comfortable, and lightweight footwear.  Crocs completed its acquisition of HEYDUDE on February 17, 2022.  After the acquisition, Crocs reported sales attributable to HEYDUDE in two segments: DTC sales; and wholesale sales (which include sales to major retailers).  HEYDUDE accounted for approximately 25% of the Company's total revenues in 2022 ($896 million out of $3.55 billion).

35.    Crocs's common stock trades on The Nasdaq Global Select Market under the ticker symbol "CROX."

### B.    Defendants' False and Misleading Statements

36.    The Class Period begins on November 3, 2022, to coincide with the announcement of the Company's third quarter 2022 financial results.  Among other things, the Company reported HEYDUDE quarterly revenues of $269.4 million (including wholesale revenues of $181.8 million and DTC revenues of $87.6 million)—representing approximately 87% year-over-year growth. Defendant Rees attributed the Company's "exceptional third quarter results, including record revenue," to "the strength of the Crocs and HEYDUDE brands."  In issuing its full year 2022

financial outlook, the Company announced that it expected HEYDUDE revenues of "approximately $850 [million] to $890 million on a reported basis, implying $940 [million] to $980 million [on a pro forma basis], including the period of time prior to the closing of the acquisition."

37.     During the accompanying earnings call held that same day, Defendant Rees praised HEYDUDE as "one of the fastest-growing casual footwear brands in the U.S. market today," citing Piper Sandler's fall 2022 "Taking Stock with Teens" survey in which "HEYDUDE ascended to the #7 favorite footwear brand among teens, up from #8 in the fall of 2021 and #9 in the spring of 2022." In concluding his prepared remarks, Defendant Rees expressed Defendants' "tremendous confidence and clear evidence as to the underlying strength and growth potential for both [Crocs] and the HEYDUDE brands." Defendant Rees noted that the Company was expanding HEYDUDE's footprint and focusing on "expand[ing] distribution" and "greater shelf presence for the brand in the future." Addressing a question regarding sales of HEYDUDE products to wholesalers, Rees assured investors:

> [A]s we approach our kind of wholesale partner management, we try and be really disciplined in terms of what inventory did they hold and making sure that they're seeing strong sell-throughs. As I mentioned, U.S. wholesale sellout was up high single digits. So that's over the same period last year. So we had actually strong consumer demand and strong sell-out. But I think what we're seeing is our wholesale customers are being really prudent in terms of how they manage their business in terms of managing their overall inventory levels and we're not going to play the game of forcing inventory into them and getting them overstocked.

38.     On February 16, 2023, the Company announced its fourth quarter and full year 2022 financial results, and reported that it expected full year 2023 HEYDUDE revenue growth of mid-20%. During the accompanying earnings call held that same day, Defendant Rees highlighted that HEYDUDE "revenues in 2022 grew 70% on a pro forma basis, driven by wholesale partner

expansion in the United States," and Defendant Mehlman added that fourth quarter 2022 HEYDUDE revenues were $279 million, a year-over-year increase of 36.6%. In an exchange with an analyst, Defendant Rees touted HEYDUDE's "really good progress" with respect to "wholesale door penetration," which "has fueled our growth." Further, Defendant Mehlman reassured investors that, even though HEYDUDE inventory was "slightly elevated," allegedly from "pre-acquisition purchases," "[o]ur entire team is extremely focused on inventory health, especially as we grow."

39.    The above statements identified in paragraphs 36-38 were materially false and misleading, and failed to disclose materially adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose: (1) the nature and sustainability of HEYDUDE's revenue growth by concealing that 2022 revenue growth was driven, in large part, by the Company's efforts to stock third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE; and (2) that, as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

**C.    The Truth Begins to Emerge**

40.    Investors began to learn the truth about the nature and unsustainability of HEYDUDE's revenue growth on April 27, 2023, when Crocs announced its first quarter 2023 financial results, reporting HEYDUDE quarterly revenue of just $235.4 million. During the accompanying earnings call held that same day, Defendant Rees acknowledged that HEYDUDE's quarterly revenue represented only 15% growth on a pro forma basis and explained that HEYDUDE's quarterly revenue growth comparisons would be challenging, stating:

> The other thing that's also important to bear in mind as you look to
> future quarters is the -- we had significant pipeline fills. So we
> opened a lot of big national accounts last year in Q2 and Q3. So

when you open a big national account and you pipeline fill 400, 500, 600 doors, that's a significant amount of volume that you don't anniversary the following year. So you've also got to take that into consideration in Q2 and Q3.

41.    On this news, the price of Crocs common stock declined $23.46 per share, or nearly 16%, from a close of $147.78 per share on April 26, 2023, to close at $124.32 per share on April 27, 2023.

42.    Nevertheless, Defendant Rees sought to reassure investors, stating that the Company was "well positioned in market with good inventories in many of our leading strategic wholesale customers," was "super confident in our kind of mid-20s growth rate that we've guided for the brand for the full year," and that its "inventory turning is performing well."

43.    The above statements identified in paragraph 42 were materially false and misleading, and failed to disclose materially adverse facts, about the Company's business and operations. Specifically, Defendants misrepresented and/or failed to disclose: (1) the nature and sustainability of HEYDUDE's revenue growth by concealing that 2022 revenue growth was driven, in large part, by the Company's efforts to stock third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE; (2) that as the Company's retail partners began to destock this excess inventory, waning product demand further negatively impacted the Company's financial results; and (3) that, as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

44.    A few weeks later, on June 7, 2023, the truth about the nature and unsustainability of HEYDUDE's revenue growth was further revealed when Defendants Rees and Mehlman attended the Robert W. Baird Global Consumer, Technology & Services Conference. At the conference, Defendant Rees more clearly revealed than he had on April 27, 2023, that a large

portion of HEYDUDE's 2022 revenue growth was not immediately repeatable given that it was actually attributable to efforts to overstock HEYDUDE products at major wholesalers and retailers. Specifically, Defendant Rees explained:

> A big part of that growth last year was pipeline fill for some of those major US retailers that we were able to expand the brand into. And I think on the left-hand side of this slide, what we're trying to highlight and break out for you all is the non-comp version. That's the pipeline fill. So $70 million in [the second quarter], $60 million in [the third quarter] of 2022 was pipeline fill.
>
> So when you're filling a major retailer, so take a [F]amous [F]ootwear or somebody with [a] thousand stores, and you're putting a significant number of SKUs on the shelf and you're putting a size run of each SKU in each store, obviously it adds up to a lot of units. And you don't sell through that all immediately. So what we're trying to highlight is a period here that . . . we won't be comping this year.
>
> I would say that pipeline fill, you could say, well, why wouldn't you do that more gradually over a number of years and smooth out the growth? It was a very conscious decision on our part to do that last year because we're very much aware that there is competition out in the marketplace. There are people selling a HEYDUDE knockoff or something that's very similar. And there are many of these retailers had private label -- there was similar product on the shelf.
>
> We knew our product will perform better and we wanted to secure that shelf space for the HEYDUDE brand. So that was a conscious decision we made. I think we probably could have done a better job being a little more clear about that but . . . that was a conscious decision we made.

45.     Later during the presentation, Defendant Rees again apologized for the fact that "we didn't do a good enough job explaining" the significance of the Company's pipeline filling activity and confirmed that "the net of that is we'd actually expect the US wholesale business in [the second quarter] and [the third quarter] of this year to be negative." Defendant Rees also acknowledged that data on inventory levels was readily available to management, stating that

Crocs's "major US wholesale accounts [send] . . . weekly tracking information on sellouts and inventory on hand"—giving the Company "a lot of visibility and transparency."

46.     On this news, the price of Crocs common stock declined $4.52 per share, or nearly 4%, from a close of $121.09 per share on June 7, 2023, to close at $116.57 per share on June 8, 2023.

47.     On July 27, 2023, in conjunction with the announcement of its second quarter 2023 financial results, Crocs reported that HEYDUDE "[w]holesale revenues declined 8.4% to $148.8 million following pipeline fill in the same period last year."  In explaining the impact of the Company's "very conscious decision" to fill the wholesale pipeline in 2022, Defendant Rees reiterated that "pipeline fill was $70 million for the second quarter of last year and $220 million in fiscal [2022]."  As a result of the Company's overstocking of wholesalers in 2022, Defendant Rees announced that, for the remainder of 2023, "[w]holesale growth is expected to be low," and Defendant Mehlman stated that the Company was now slashing expected HEYDUDE revenue growth from the previously-announced mid-20's range to between 14% and 18%.

48.     On this news, the price of Crocs common stock declined $17.50 per share, or nearly 15%, from a close of $119.80 per share on July 26, 2023, to close at $102.30 per share on July 27, 2023.

49.     On August 16, 2023, Williams Trading significantly cut its price target on Crocs from $145 per share, to $113 per share, due to near-term wholesale concerns for HEYDUDE.  As a result of discussions that Williams Trading analyst Sam Poser had with several HEYDUDE wholesale accounts at the Atlanta Shoe Market trade show, Williams Trading highlighted elevated HEYDUDE inventory levels at approved retailers and the "overabundance" of HEYDUDE products on Amazon.com at below suggested retail price.

50.    On this news, the price of Crocs common stock declined $3.79 per share, or nearly 4%, from a close of $97.80 per share on August 15, 2023, to close at $94.01 per share on August 16, 2023.

51.    On November 2, 2023, Crocs announced its financial results for the third quarter of 2023 and revealed that HEYDUDE wholesale revenue declined 19.4% year-over-year "following prior year pipeline fill and as our wholesale partners were more cautious on at-once orders." Critically, despite the fact that HEYDUDE DTC sales in the third quarter grew 14.6% year-over-year, the Company was forced to further cut its 2023 HEYDUDE revenue growth guidance from between 14% and 18% on a reported basis, to between 4% and 6% on a reported basis.

52.    During the Company's accompanying investor call held that same day, Defendant Rees further admitted that, despite his prior assurances regarding inventory levels, HEYDUDE's "inventory was too high" and that the Company "is proactively lowering in-channel inventories" and "working with our strategic accounts to clean up that inventory and putting them in a strong sell-through and a more profitable position."  Additionally, Defendant Rees acknowledged that the Company "anticipate[s] that wholesale sales . . . will be down in the first part of [2024]" as well.

53.    On this news, the price of Crocs common stock declined $4.62 per share, or more than 5%, from a close of $87.41 per share on November 1, 2023, to close at $82.79 per share on November 2, 2023.

**D.    Defendants' Continued False and Misleading Statements as the Truth Is More Fully Revealed**

54.    Throughout the remainder of the Class Period, Defendants continued to downplay the impact of the Company's overstocking of third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE.  Specifically, Defendants further misled investors by

concealing that, in addition to the overstocking problem, waning product demand would further negatively impact the Company's financial results.

55.     On February 15, 2024, the Company announced fourth quarter and full year 2023 results and its outlook for 2024.  During the accompanying earnings call held that same day, Defendant Rees was sanguine about HEYDUDE's trajectory in 2024, proclaiming that, based on third-party data, "HEYDUDE brand during 2023 gained [substantial] market share in the fashion casual category."  Additionally, Defendant Rees, while acknowledging that "we had too many accounts with too much inventory kind of competing against each other," sought to reassure investors that the Company has "gone through the process of cleaning up our account base because [of] . . . too much inventory."  Defendant Rees added that "as we talk to those strategic partners" about HEYDUDE, "they are really bullish on the brand."

56.     The above statements identified in paragraph 55 were materially false and misleading, and failed to disclose materially adverse facts, about the Company's business and operations.  Specifically, Defendants misrepresented and/or failed to disclose: (1) that as the Company's retail partners began to destock excess HEYDUDE inventory, waning product demand further negatively impacted the Company's financial results; and (2) that, as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

57.     On April 16, 2024, the Company announced its separation from Rick Blackshaw, Executive Vice President and Brand President for HEYDUDE.

58.     On this news, the price of Crocs common stock declined $2.68 per share, or approximately 2.2%, from a close of $123.36 per share on April 15, 2024, to close at $120.68 per share on April 16, 2024.

59.     On May 7, 2024, the Company announced its financial results for the first quarter of 2024.  During the accompanying earnings call held that same day, Defendant Rees touted that HEYDUDE performed ahead of expectations for the quarter, indicating that Crocs was "pleased with the work we have done to clean up our [wholesale] account base" and highlighting that "HEYDUDE was the #8 preferred footwear brand" according to Piper Sandler's spring 2024 survey.  Defendant Mehlman acknowledged that HEYDUDE sales were down 17% from the prior year and wholesale revenue was down 20%, but claimed that Crocs expected "HEYDUDE sales trends to improve each quarter [in 2024]" and for the wholesale "sell-in and sell-through dynamic to normalize into [the fourth quarter]."  Defendant Mehlman further acknowledged that the Company expected HEYDUDE sales to be down 17% to 19% for the second quarter of 2024 compared to the second quarter of 2023, and down 8% to 10% for full year 2024 compared to full year 2023.

60.     On August 1, 2024, the Company announced its financial results for the second quarter of 2024.  During the accompanying earnings call held that same day, Defendant Rees, while admitting that HEYDUDE's wholesale business "remain[ed] challenging," trumpeted HEYDUDE's overall performance in the quarter, explaining that Crocs made progress in "improving the health of our underlying business in North America, exemplified by pricing on digital up versus prior year, solid recovery in gross margins[,] and our inventories turning in excess of 4 times."  Moreover, he reassured investors that, despite its wholesale channel issues, Crocs was "focus[ed] on energizing the brand through improved marketing effectiveness and new product introductions."

61.     The above statements identified in paragraphs 59-60 were materially false and misleading, and failed to disclose materially adverse facts, about the Company's business and

operations.   Specifically, Defendants misrepresented and/or failed to disclose: (1) that as the Company's retail partners began to destock excess HEYDUDE inventory, waning product demand further negatively impacted the Company's financial results; and (2) that, as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

62.     Investors more fully learned the truth about HEYDUDE's prospects on October 29, 2024, when the Company reported its financial results for the third quarter of 2024.   During the accompanying earnings call held that same day, Defendant Rees disclosed that HEYDUDE revenues fell below the reduced expectations that Defendants had communicated in the prior quarters and revealed that "HEYDUDE's recent performance and the current operating environment are signaling it will take longer than we had initially planned for the business to turn the corner."   Defendant Rees attributed HEYDUDE's struggles to "excess inventories in the market" and admitted that "we've made good progress, but frankly, not quite all the progress we want to make" in resolving the excess inventory issue.   Defendant Healy additionally explained that revenue expectations for HEYDUDE would be decreased due to "lower-than-expected sellouts on both digital and wholesale."   Defendant Rees conceded that "if you think about this sort of [20]22 into [20]23 timeframe, in retrospect, we absolutely shipped too much product[]," underscoring that the decision was "wrong" and highlighting that a lack of product demand exacerbated the issue.

63.     On this news, the price of Crocs common stock declined $26.47 per share, or approximately 19.2%, from a close of $138.05 per share on October 28, 2024, to close at $111.58 per share on October 29, 2024.

64.    Reacting to the news, on October 29, 2024, analysts at UBS Securities LLC reiterated their Neutral rating of the stock and cut their price target from $146.00 to $122.00, explaining that "HEYDUDE is losing traction with consumers."

## V.    PLAINTIFF'S CLASS ACTION ALLEGATIONS

65.    Plaintiff brings this class action under Rule 23 of the Federal Rules of Civil Procedure on behalf of a class of all persons and entities who purchased or otherwise acquired Crocs common stock during the Class Period (the "Class").   Excluded from the Class are Defendants, their agents, directors and officers of Crocs, and their families and affiliates.

66.    The members of the Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

67.    There is a well-defined community of interest in the questions of law and fact involved in this case.  Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

   a.    Whether Defendants violated the Exchange Act;

   b.    Whether Defendants omitted and/or misrepresented material facts;

   c.    Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

   d.    Whether Defendants knew or recklessly disregarded that their statements were false and/or misleading;

   e.    Whether the price of Crocs common stock was artificially inflated; and

   f.    The extent of damage sustained by members of the Class and the appropriate measure of damages.

68.     Plaintiff's claims are typical of those of the Class because Plaintiff and the Class sustained damages from Defendants' wrongful conduct.

69.     Plaintiff will adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation.  Plaintiff has no interests that conflict with those of the Class.

70.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Joinder of all Class members is impracticable.

## VI.    APPLICABILITY OF PRESUMPTION OF RELIANCE: FRAUD-ON-THE MARKET DOCTRINE

71.     Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a.      Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b.      The omissions and misrepresentations were material;

c.      The Company's common stock traded on an efficient market;

d.      The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of the Company's common stock; and

e.      Plaintiff and the Class purchased Crocs common stock between the time the Company and the Individual Defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

72.     At all relevant times, the market for the Company's common stock was efficient because: (1) as a regulated issuer, the Company filed periodic public reports with the SEC; and (2) the Company regularly communicated with public investors using established market

communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

## VII.  <u>NO SAFE HARBOR</u>

73.    Defendants' "Safe Harbor" warnings accompanying any forward-looking statements issued during the Class Period were ineffective to shield those statements from liability.

74.    Defendants are liable for any false and/or misleading forward-looking statements pleaded because, at the time each forward-looking statement was made, the speaker knew the forward-looking statement was false or misleading and the forward-looking statement was authorized and/or approved by an executive officer of the Company who knew that the forward-looking statement was false.  None of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by Defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## VIII.  <u>LOSS CAUSATION/ECONOMIC LOSS</u>

75.    Defendants' wrongful conduct directly and proximately caused the economic loss suffered by Plaintiff and the Class.  The price of Crocs common stock significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.  As a result of their purchases of Crocs common stock during the Class Period, Plaintiff and the Class suffered economic loss, i.e., damages, under the federal securities laws.

IX.    **ADDITIONAL SCIENTER ALLEGATIONS**

76.    During the Class Period, Defendants had both the motive and opportunity to commit fraud.  They also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of Crocs common stock during the Class Period.

X.    **CLAIMS AGAINST DEFENDANTS**

**COUNT I**

**Violations of Section 10(b) of the Exchange Act and
SEC Rule 10b-5 Promulgated Thereunder
Against All Defendants**

77.    Plaintiff incorporates by reference the allegations in the preceding paragraphs.

78.    During the Class Period, Defendants carried out a plan, scheme, and course of conduct that was intended to and, throughout the Class Period, did: (1) deceive the investing public, including Plaintiff and the Class; and (2) cause Plaintiff and the Class to purchase Crocs common stock at artificially inflated prices.  In furtherance of this unlawful scheme, plan, and course of conduct, Defendants, and each of them, took the actions set forth herein.

79.    Defendants: (1) employed devices, schemes, and artifices to defraud; (2) made untrue statements of material fact and/or omitted material facts necessary to make the statements not misleading; and (3) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of Crocs common stock in an effort to maintain artificially high market prices thereof in violation of Section 10(b) of the Exchange Act and SEC Rule 10b-5.

80.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the
Class suffered damages in connection with their respective purchases of the Company's common
stock during the Class Period.

## COUNT II

### Violations of Section 20(a) of the Exchange Act
### Against the Individual Defendants

81.     Plaintiff incorporates by reference the allegations in the preceding paragraphs.

82.     The Individual Defendants acted as controlling persons of Crocs within the
meaning of Section 20(a) of the Exchange Act.  By virtue of their high-level positions, and their
ownership and contractual rights, participation in and/or awareness of the Company's operations,
and/or intimate knowledge of the false statements filed by the Company with the SEC and
disseminated to the investing public, the Individual Defendants had the power to influence and
control—and did influence and control, directly or indirectly—the decision-making of the
Company, including the content and dissemination of the various false and/or misleading
statements.  The Individual Defendants were provided with or had unlimited access to copies of
the Company's reports and other statements alleged by Plaintiff to be misleading prior to and/or
shortly after these statements were issued and had the ability to prevent the issuance of the
statements or cause the statements to be corrected.

83.     In particular, each of the Individual Defendants had direct and supervisory
involvement in the day-to-day operations of the Company and, therefore, are presumed to have
had the power to control or influence the activities giving rise to the securities violations as alleged
herein, and exercised the same.

84.     As described above, the Company and the Individual Defendants each violated
Section 10(b) of the Exchange Act and SEC Rule 10b-5 by their acts and omissions as alleged in

this Complaint. By virtue of their positions as controlling persons, the Individual Defendants are liable under Section 20(a) of the Exchange Act. As a direct and proximate result of this wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of Crocs common stock during the Class Period.

## XI. <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

    a.    Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

    b.    Awarding compensatory damages in favor of Plaintiff and other members of the Class against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

    c.    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

    d.    Such other and further relief as the Court may deem just and proper.

## XII. <u>DEMAND FOR JURY TRIAL</u>

Plaintiff hereby demands a trial by jury.

Dated: January 22, 2025

*Of Counsel:*

**KESSLER TOPAZ**
  **MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706

**BERNSTEIN LITOWITZ BERGER**
  **& GROSSMANN LLP**

*/s/ Gregory V. Varallo*
Gregory V. Varallo (DE Bar ID #2242)
Andrew Blumberg (DE Bar ID #6744)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
andrew.blumberg@blbglaw.com

Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com

*Counsel for Plaintiff Michael Anthony
Carretta*

*Counsel for Plaintiff Michael Anthony
Carretta*

**CERTIFICATION**

I, Michael Anthony Carretta, declare that:

1.      I have reviewed the Class Action Complaint for Violations of the Federal Securities Laws and authorize its filing.

2.      I did not purchase and/or acquire the securities that are the subject of this action at the direction of my counsel nor in order to participate in any private action under the federal securities laws.

3.      I am willing to serve as a representative party on behalf of the class, including giving testimony at deposition and trial, if necessary. I understand that this is not a claim form, and that my ability to share in any recovery as a member of the class is not dependent upon execution of this Certification.

4.      My Class Period purchase and sale transaction(s) in the Crocs, Inc. securities that are the subject of this action are attached in Schedule A. I have complete authority to bring a suit to recover for investment losses for all securities set forth in Schedule A.

5.      During the three years prior to the date of this Certification, I have not sought to serve nor served as a representative party for a class in an action filed under the federal securities laws.

6.      I will not accept any payment for serving as a representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on: ___1/15/2025___

DocuSigned by:

*Michael Anthony Carretta*

7AEB5BC8AB604BB...

Michael Anthony Carretta

**SCHEDULE A**

| Security | Buy/Sell | Date | Quantity | Price |
|----------|----------|------|----------|-------|
| Common Stock | Buy | 8/26/2024 | 70 | $139.3400 |