**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL ANTHONY CARRETTA, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CROCS, INC., ANDREW REES, ANNE MEHLMAN, and SUSAN HEALY, <br><br> Defendants. | Case No. 1:25-cv-00096-JLH <br><br> **CLASS ACTION** |

[Additional caption on following page.]

**OPENING BRIEF IN SUPPORT OF THE MOTION OF GRINDYZER INC.
FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF SELECTION OF COUNSEL**

**Dated: March 24, 2025**

**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
Gregory V. Varallo (DE Bar ID #2242)
Andrew Blumberg (DE Bar ID #6744)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
andrew.blumberg@blbglaw.com

*Liaison Counsel for Proposed Lead Plaintiff
Grindyzer Inc.*

**KESSLER TOPAZ
  MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff
Grindyzer Inc. and Proposed Lead Counsel
for the Class*

| | |
|---|---|
| NEIL SHAH, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> CROCS, INC., ANDREW REES, ANNE MEHLMAN, and SUSAN HEALY, <br><br> Defendants. | Case No. 1:25-cv-00356-UNA <br><br> **<u>CLASS ACTION</u>** |

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................................1

NATURE AND STAGE OF PROCEEDINGS ..........................................................3

SUMMARY OF THE ARGUMENT ..........................................................................3

STATEMENT OF FACTS ..........................................................................................4

ARGUMENT................................................................................................................9

I.     THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................9

II.    GRINDYZER SATISFIES THE PSLRA'S REQUIREMENTS AND
       SHOULD BE APPOINTED AS LEAD PLAINTIFF ......................................10

       A.    Grindyzer Has Timely Moved for Appointment as Lead Plaintiff........12

       B.    Grindyzer Asserts the Largest Financial Interest in the Relief Sought by
             the Class ..................................................................................................12

       C.    Grindyzer Satisfies the Requirements of Rule 23...................................12

             1.    Grindyzer's Claims are Typical of Those of the Class .................13

             2.    Grindyzer Will Fairly and Adequately Protect the Interests
                   of the Class...................................................................................13

III.   THE COURT SHOULD APPROVE GRINDYZER'S SELECTION OF
       COUNSEL ....................................................................................................15

CONCLUSION............................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bhojwani v. Pistiolis,*
Nos. 06 Civ. 13761(CM)(KNF), *et al.*,
2007 WL 2197836 (S.D.N.Y. June 26, 2007) ...........................................................................1

*In re Cendant Corp. Litig.*,
264 F.3d 201 (3d Cir. 2001).............................................................................. *passim*

*Phetteplace v. Cancer Genetics, Inc.*,
No. 2:18-CV-05612-ES-SCM,
2018 WL 11233227 (D.N.J. Aug. 7, 2018) ........................................................................4, 10

*Vandevelde v. China Nat. Gas, Inc.*,
277 F.R.D. 126 (D. Del. 2011) ...................................................................................13, 14

**Statutes**

15 U.S.C. § 78u-4(a) ........................................................................................ *passim*

**Other Authorities**

Fed. R. Civ. P. 23(a) ...........................................................................................13

Fed. R. Civ. P. 42(a) .......................................................................................3, 4, 10

ii

Grindyzer Inc. ("Grindyzer") respectfully submits this Opening Brief in support of its motion for: (1) consolidation of the above-captioned, related actions (the "Related Actions") pursuant to Rule 42(a) of the Federal Rules of Civil Procedure ("Rule 42(a)"); (2) appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); (3) approval of its selection of Kessler Topaz Meltzer & Check, LLP ("Kessler Topaz") as Lead Counsel for the class; and (4) such other and further relief as the Court may deem just and proper.

## INTRODUCTION

The Related Actions are federal securities class actions brought against Crocs, Inc. ("Crocs" or the "Company") and certain of the Company's executive officers (collectively, "Defendants"), for violations of Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and United States Securities and Exchange Commission Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. The Related Actions are brought on behalf of a class of all persons and entities who purchased or otherwise acquired Crocs common stock or call options between November 3, 2022, and October 28, 2024, inclusive (the "Class Period").[1] As detailed below, the Related Actions involve common issues of law and fact and should be consolidated pursuant to Rule 42(a). *See infra* Argument, Section I.

After consolidation, the PSLRA allows any member of the purported class to move for appointment as lead plaintiff and sets forth the process for determining which movant is the "most

---

[1] For purposes of this motion, Grindyzer refers to the broadest set of claims. *See, e.g.*, *Bhojwani v. Pistiolis*, Nos. 06 Civ. 13761(CM)(KNF), *et al.*, 2007 WL 2197836, at *3 (S.D.N.Y. June 26, 2007), *R. & R. partially adopted*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 9228588 (S.D.N.Y. July 30, 2007) (applying more inclusive class period for purposes of lead plaintiff appointment).

adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(A)-(B). Pursuant to the PSLRA, a court must appoint the "most adequate plaintiff" as lead plaintiff, which is the movant that: (1) makes a timely motion under the PSLRA's sixty-day deadline; (2) asserts the largest financial interest among the movants seeking appointment as lead plaintiff; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I); *see also In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001) (describing the PSLRA's process for selecting a lead plaintiff).

Here, Grindyzer respectfully submits that it is presumptively the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff. Grindyzer's motion is timely and its losses of approximately $12,619.68 under a last-in, first-out ("LIFO") analysis in connection with its purchases of Crocs common stock during the Class Period represent the largest known financial interest in the relief sought by the class. *See* Declaration of Andrew Blumberg in Support of the Motion of Grindyzer Inc. for Consolidation of Related Actions, Appointment as Lead Plaintiff, and Approval of Selection of Counsel ("Blumberg Decl."), Exs. A & B. Additionally, Grindyzer easily satisfies the relevant requirements of Federal Rule of Civil Procedure 23 ("Rule 23"). Grindyzer's claims are typical of all members of the class since it purchased Crocs common stock during the Class Period at inflated prices caused by Defendants' material misrepresentations and omissions and, like other class members, suffered losses when the truth about Crocs was disclosed. Grindyzer also will fairly and adequately represent the class in the Related Actions. *See infra* Argument, Section II. Moreover, as set forth in the Declaration of Hicham El Hajj in Support of the Motion of Grindyzer Inc. for Appointment as Lead Plaintiff and Approval of Selection of Counsel (the "El Hajj Declaration"), Grindyzer fully understands the Lead Plaintiff's obligations to the class under the PSLRA and is willing and able to undertake those responsibilities to

guarantee the vigorous prosecution of this litigation. *See* Blumberg Decl., Ex. C (El Hajj Declaration).

Finally, Grindyzer has further demonstrated its adequacy to serve as Lead Plaintiff by retaining experienced and competent counsel to represent the class. As the "most adequate plaintiff" under the PSLRA, Grindyzer's selection of Kessler Topaz as Lead Counsel for the class should be approved. 15 U.S.C. § 78u-4(a)(3)(B)(v). Kessler Topaz, which filed the initial complaint, is a nationally recognized securities class action litigation firm that has an extensive history of prosecuting complex actions under the PSLRA and has recovered billions of dollars in damages for injured shareholders while serving as lead counsel. *See infra* Argument, Section III. Thus, the class can be assured of zealous representation if Grindyzer's selection of Kessler Topaz as Lead Counsel for the class is approved. Accordingly, Grindyzer respectfully requests that its selection of counsel be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v) ("The most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class.").

## NATURE AND STAGE OF PROCEEDINGS

The Related Actions assert claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act on behalf of a class of all persons and entities who purchased or otherwise acquired Crocs common stock or call options between November 3, 2022, and October 28, 2024. The Related Actions are in the preliminary stages of litigation and, pursuant to the PSLRA, require appointment of a Lead Plaintiff and Lead Counsel.

## SUMMARY OF THE ARGUMENT

1.    The PSLRA requires courts to address consolidation before selecting a lead plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(ii). In terms of consolidation, Rule 42(a) states that consolidation of actions before the court is appropriate if such actions involve common questions

of law or fact. *See* Fed. R. Civ. P. 42(a); *see also Phetteplace v. Cancer Genetics, Inc.*, No. 2:18-CV-05612-ES-SCM, 2018 WL 11233227, at \*3 (D.N.J. Aug. 7, 2018), *R. & R. adopted*, No. 18-5612 (ES) (SCM), 2018 WL 1123326 (D.N.J. Aug. 27, 2018) (noting that "Rule 42 provides the Court with broad discretion to consolidate multiple pending actions if they involve common questions of law or fact") (citations omitted). Grindyzer respectfully submits that consolidation is appropriate because the Related Actions assert claims under the Exchange Act against the same defendants during identical class periods for substantially the same conduct.

2.      The PSLRA requires district courts to appoint the "most adequate plaintiff" as Lead Plaintiff. 15 U.S.C. § 78u-4(a)(3)(B). Grindyzer respectfully submits that it is the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff because: (1) Grindyzer timely filed a motion; (2) to the best of Grindyzer's knowledge, it has the largest financial interest in the relief sought by the class; and (3) Grindyzer will fairly and adequately represent the interests of the class. *See id.* § 78u-4(a)(3)(B)(iii)(I).

3.      The PSLRA also provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v). Accordingly, Grindyzer respectfully requests that the Court approve its selection of Kessler Topaz as Lead Counsel for the class.

## STATEMENT OF FACTS

Crocs, a Delaware corporation with its principal executive offices in Broomfield, Colorado, is a casual lifestyle footwear brand. Crocs's common stock trades on The Nasdaq Global Select Market under the ticker symbol "CROX." *See Carretta v. Crocs, Inc., et al.*, No. 1:25-cv-00096-JLH (D. Del. filed Jan. 22, 2025) (the "*Carretta* Action"), D.I. 1, ¶ 2.

In February 2022, Crocs completed its acquisition of HEYDUDE, a footwear brand focusing on casual, comfortable, and lightweight footwear.  As is relevant here, Crocs reports HEYDUDE sales in two segments: direct-to-consumer ("DTC") sales; and wholesale sales (which include sales to major retailers).  Despite the fact that HEYDUDE was only acquired by Crocs in mid-February 2022, HEYDUDE accounted for approximately 25% of the Company's total revenues in 2022.  *See id.* ¶ 3.

The Related Actions allege that, during the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business and operations.  Specifically, Defendants misled investors by concealing the fact that the strong revenue growth exhibited by the Company's HEYDUDE brand following its acquisition in February 2022, was largely driven by a conscious decision on the part of Crocs management to aggressively stock its third-party wholesaler pipeline with HEYDUDE products, regardless of the level of retail demand being experienced by those wholesalers.  Defendants pursued this overstocking strategy despite assurances to investors by Defendant Andrew Rees, the Company's Chief Executive Officer, that Crocs would not "play the game of forcing inventory into [wholesalers] and getting them overstocked."  As a result, unbeknownst to investors, the Company reported HEYDUDE revenue numbers in 2022, that were not indicative of actual retail demand for HEYDUDE shoes and, over the longer term, were entirely unsustainable.  Moreover, after the Company's retail partners began to destock this excess inventory, Defendants further misled investors by concealing that waning product demand for HEYDUDE shoes would further impact the Company's financial results.  *See id.* ¶ 4.

Investors began to learn the truth about the nature and unsustainability of HEYDUDE's revenue growth on April 27, 2023, when Defendant Rees revealed during the Company's first

5

quarter 2023 earnings call that much of HEYDUDE's revenue growth in 2022 was attributable to efforts to stock the Company's wholesale partners with HEYDUDE products and was not necessarily indicative of actual downstream retail sales. *See id.* ¶ 5.  On this news, the price of Crocs common stock declined $23.46 per share, or nearly 16%, from a close of $147.78 per share on April 26, 2023, to close at $124.32 per share on April 27, 2023.

On June 7, 2023, at an industry conference held by Robert W. Baird & Co. Incorporated, Defendant Rees provided additional detail regarding HEYDUDE's purported growth, explicitly informing investors that HEYDUDE's revenue growth was generated, in large part, by the Company's effort to stock HEYDUDE products with Crocs's major retailers   Specifically, Defendant Rees stated that these wholesale stocking efforts accounted for $70 million in revenue in the second quarter of 2022 (out of $162.5 million in HEYDUDE wholesale revenues) and $60 million in revenue in the third quarter of 2022 (out of $181.8 million in HEYDUDE wholesale revenues).  Additionally, Defendant Rees revealed that Crocs had intentionally made significant sales to the Company's major retail and wholesale partners, rather than gradually increasing third-party HEYDUDE inventory over several years to reflect actual retail demand for the product. These statements flatly contradicted Defendant Rees's earlier assertions that Crocs would not overstock its wholesalers.  *See id.* ¶ 7.  On this news, the price of Crocs common stock declined $4.52 per share, or nearly 4%, from a close of $121.09 per share on June 7, 2023, to close at $116.57 per share on June 8, 2023.

On July 27, 2023, Defendant Rees admitted that Crocs's deliberate overstocking accounted for approximately $220 million of HEYDUDE's $896 million in revenue for the period following the closing of the acquisition on February 17, 2022.  Defendant Anne Mehlman, the Company's Chief Financial Officer at the time, also announced that Crocs was reducing HEYDUDE's revenue

6

growth guidance for the remainder of fiscal 2023, to a range between 14% and 18%—substantially lower than previous guidance revenue growth in the mid-20s—effectively acknowledging that much of HEYDUDE's purported growth was based upon Defendants' decision to overstock its wholesalers. *See id.* ¶ 9. On this news, the price of Crocs common stock declined $17.50 per share, or nearly 15%, from a close of $119.80 per share on July 26, 2023, to close at $102.30 per share on July 27, 2023.

On August 16, 2023, Williams Trading LLC ("Williams Trading") significantly decreased its price target on Crocs from $145 per share, to $113 per share, due to information its primary Crocs analyst had uncovered as a result of his discussions with several HEYDUDE wholesale accounts regarding wholesaler inventory levels and the pricing for HEYDUDE products. Among other things, Williams Trading highlighted elevated HEYDUDE inventory levels at approved retailers and the "overabundance" of HEYDUDE products on Amazon.com at below suggested retail price. *See id.* ¶ 11. On this news, the price of Crocs common stock declined $3.79 per share, or nearly 4%, from a close of $97.80 per share on August 15, 2023, to close at $94.01 per share on August 16, 2023.

On November 2, 2023, Crocs announced its financial results for the third quarter of 2023, and revealed that HEYDUDE's "[w]holesale revenues declined 19.4% to $146.5 million following prior year pipeline fill and as our wholesale partners were more cautious on at-once orders." As a result of the prior overstocking of HEYDUDE's products, Crocs further slashed its 2023 HEYDUDE revenue growth guidance from between 14% and 18%, to between only 4% and 6% (even though HEYDUDE DTC sales continued to grow 14.6% during the quarter). In connection with this announcement, Defendant Rees admitted that HEYDUDE "inventory was too high" and that the Company "is proactively lowering in-channel inventories" and "working with our strategic

7

accounts to clean up that inventory and putting them in a strong sell-through and a more profitable position." *See id.* ¶ 13. On this news, the price of Crocs common stock declined $4.62 per share, or more than 5%, from a close of $87.41 per share on November 1, 2023, to close at $82.79 per share on November 2, 2023.

Throughout the remainder of the Class Period, Defendants continued to downplay the impact of the Company's overstocking of third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE. After the Company's retail partners began to destock this excess inventory, Defendants further misled investors by concealing that waning product demand would significantly exacerbate the negative impact on the Company's financial results. For example, during the Company's earnings call discussing its fourth quarter and full year 2023 results held on February 15, 2024, Defendant Rees proclaimed that, based on third-party data, the "HEYDUDE brand during 2023 gained [substantial] market share in the fashion casual category." Further, in discussing the excess inventory issue, Defendant Rees reassured investors that Crocs had "gone through the process of cleaning up our account base because [of] . . . too much inventory," adding further that its "strategic partners . . . are really bullish on the brand." *See id.* ¶ 15.

On April 16, 2024, the Company announced its separation from Rick Blackshaw, Executive Vice President and Brand President for HEYDUDE. *See id.* ¶ 16. On this news, the price of Crocs common stock declined $2.68 per share, or approximately 2.2%, from a close of $123.36 per share on April 15, 2024, to close at $120.68 per share on April 16, 2024.

Then, on October 29, 2024, investors learned more about HEYDUDE's prospects when the Company reported its financial results for the third quarter of 2024. During the accompanying earnings call, Defendant Rees disclosed that HEYDUDE revenues fell below the Company's

expectations and revealed that "HEYDUDE's recent performance and the current operating environment are signaling it will take longer than we had initially planned for the business to turn the corner."  Defendant Rees attributed HEYDUDE's struggles to "excess inventories in the market" and admitted that "we've made good progress, but frankly, not quite all the progress we want to make" in resolving the inventory issue.  Moreover, Defendant Rees admitted that "if you think about this sort of [20]22 into [20]23 timeframe, in retrospect, we absolutely shipped too much product[]," calling that decision "wrong" and highlighting that a lack of product demand exacerbated the issue.  *See id.* ¶ 18.  On this news, the price of Crocs common stock declined $26.47 per share, or approximately 19.2%, from a close of $138.05 per share on October 28, 2024, to close at $111.58 per share on October 29, 2024.

## **ARGUMENT**

### **I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under [the Exchange Act] has been filed," courts shall not appoint a lead plaintiff "until after the decision on the motion to consolidate is rendered." 15 U.S.C. 78u-4(a)(3)(B)(ii).

Here, there are at least two related securities class actions asserting claims under the federal securities laws on behalf of investors against Defendants:

| Case Caption | Date Filed | Claims/Class Period |
|---|---|---|
| *Carretta v. Crocs, Inc., et al.*, No. 1:25-cv-00096-JLH (D. Del.) | January 22, 2025 | Sections 10(b) and 20(a) of the Exchange Act; on behalf of a class of all persons and entities who purchased or otherwise acquired Crocs common stock between November 3, 2022, and October 28, 2024, inclusive |
| *Shah v. Crocs, Inc., et al.*, No. 1:25-cv-00356-UNA (D. Del.) | March 21, 2025 | Sections 10(b) and 20(a) of the Exchange Act; on behalf of a class of all persons and entities who purchased or otherwise acquired Crocs common stock or call options between November 3, 2022, and October 28, 2024, inclusive |

Under Rule 42(a), consolidation of actions before the court is appropriate where the actions "involve a common question of law or fact." Fed. R. Civ. P. 42(a); *see also Cancer Genetics*, 2018 WL 11233227, at *3 (consolidating related actions that were "based on substantially the same conduct, involve substantially the same claims, and name the same defendants" and noting that there was "no reason to believe that consolidation of these actions would result in unnecessary delays, expense, or confusion") (citations omitted). Here, the Related Actions assert similar claims under the Exchange Act against the same defendants relating to substantially the same conduct during identical class periods. Accordingly, the Related Actions involve common questions of law or fact and, therefore, should be consolidated.

## II. GRINDYZER SATISFIES THE PSLRA'S REQUIREMENTS AND SHOULD BE APPOINTED AS LEAD PLAINTIFF

The PSLRA establishes the procedure for selecting a lead plaintiff in a class action lawsuit asserting claims under the federal securities laws. *See* 15 U.S.C. § 78u-4(a)(1)-(3)(B)(i). First, a plaintiff who files the initial action must publish a notice to the class within twenty days of filing

10

the action informing class members of: (1) the pendency of the action; (2) the claims asserted therein; (3) the purported class period; and (4) the right to move the court to be appointed as lead plaintiff within sixty days of the publication of the notice. *See id*. § 78u-4(a)(3)(A)(i). Within sixty days of the publication of the notice, any member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. *See id*. § 78u-4(a)(3)(A)-(B).

Second, the PSLRA provides that within ninety days after publication of the notice, the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class members. *See id*. § 78u-4(a)(3)(B)(i). In determining the "most adequate plaintiff," the PSLRA provides that the court shall adopt a presumption that the "most adequate plaintiff" in any private action arising under the PSLRA is the movant that "has either filed the complaint or made a motion in response to a notice," "has the largest financial interest in the relief sought by the class," and "otherwise satisfies the requirements of Rule 23." *Id*. § 78u-4(a)(3)(B)(iii)(I). The "most adequate plaintiff" presumption may be rebutted only upon "proof" that the movant "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. § 78u-4(a)(3)(B)(iii)(II).

Here, Grindyzer is the "most adequate plaintiff" because it: (1) timely moved for appointment as Lead Plaintiff; (2) possesses the "largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23" for purposes of this motion. *Id*. § 78u-4(a)(3)(B)(iii)(I).

**A.      Grindyzer Has Timely Moved for Appointment as Lead Plaintiff**

The PSLRA allows any member of the class to move for appointment as lead plaintiff within sixty days of the publication of notice that the first action has been filed.  *See id*. § 78u-4(a)(3)(A)(i)(II).  On January 22, 2025, plaintiff Michael Anthony Carretta, through his counsel Kessler Topaz, filed the *Carretta* Action, which was the initial complaint filed against Defendants. That same day, Kessler Topaz published notice in *PR Newswire*, alerting investors to the pendency of the *Carretta* Action and informing them of the March 24, 2025 deadline to seek appointment as Lead Plaintiff.  *See* Blumberg Decl., Ex. D.  Accordingly, Grindyzer has timely moved this Court for appointment as Lead Plaintiff on behalf of all members of the class.

**B.      Grindyzer Asserts the Largest Financial Interest in the Relief Sought by the Class**

The PSLRA adopts a rebuttable presumption that the "most adequate plaintiff" is the movant with the "largest financial interest in the relief sought by the class" who "otherwise satisfies the requirements of Rule 23."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, Grindyzer suffered losses of approximately $12,619.68 under a LIFO analysis in connection with its purchases of Crocs common stock during the Class Period.  *See* Blumberg Decl., Exs. A & B.  To the best of its knowledge, Grindyzer has the largest financial interest in this matter and is the presumptive "most adequate plaintiff."  *See Cendant*, 264 F.3d at 243 ("The Reform Act establishes a presumption that the class member most capable of adequately representing the interests of class members is the shareholder with the largest financial stake in the recovery sought by the class.") (citation and internal quotation marks omitted).

**C.      Grindyzer Satisfies the Requirements of Rule 23**

In addition to possessing the largest financial interest in the relief sought by the class, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of

Civil Procedure" in order to trigger the presumption of adequacy.    15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).   At the lead plaintiff stage, a movant needs to make only a "*prima facie* showing of typicality and adequacy."  *Cendant*, 264 F.3d at 263; *see also Vandevelde v. China Nat. Gas, Inc.*, 277 F.R.D. 126, 132 (D. Del. 2011) (noting that, at the lead plaintiff stage, "the movant must establish only a *prima facie* case of typicality and adequacy under traditional Rule 23 principles") (citation omitted and emphasis in original).

### 1.    Grindyzer's Claims are Typical of Those of the Class

The typicality requirement "consider[s] whether the circumstances of the movant with the largest losses are markedly different or the legal theory upon which the claims [of that movant] are based differ[] from that upon which the claims of other class members will perforce be based." *Cendant*, 264 F.3d at 265 (citations and internal quotation marks omitted; alterations in original). Here, Grindyzer satisfies the typicality requirement because, just like all other proposed class members, it seeks to recover for losses on its investments in Crocs securities incurred as a result of Defendants' misrepresentations and omissions that resulted in subsequent declines in the price of Crocs common stock.   Thus, Grindyzer's claims arise from the same conduct as those of the other class members, and Grindyzer satisfies Rule 23's typicality requirement.  *See Vandevelde*, 277 F.R.D. at 132 (finding that a lead plaintiff movant had satisfied the typicality requirement where movant "ha[d] the same interests and shares the same legal theories as the rest of the class").

### 2.    Grindyzer Will Fairly and Adequately Protect the Interests of the Class

The adequacy element of Rule 23 is satisfied where the lead plaintiff can "fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In evaluating whether a movant satisfies the adequacy requirement, courts consider whether the movant "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate

counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *Cendant*, 264 F.3d at 265 (citations omitted; alterations in original).

Grindyzer is adequate because its interest in vigorously pursuing claims against Defendants—given Grindyzer's substantial losses—is aligned with the interests of the members of the class who were similarly harmed as a result of Defendants' false and/or misleading statements. There is no potential conflict between Grindyzer's interests and those of the other members of the class, and Grindyzer is fully committed to vigorously pursuing the claims on behalf of the class. *See Vandevelde*, 277 F.R.D. at 133 (finding that a lead plaintiff movant had satisfied the adequacy requirement where movant "attest[ed] to his desire to be lead plaintiff and expressing his understanding of the responsibilities that such a position entails" and has chosen adequate lead counsel for the class.).

Furthermore, as set forth in the El Hajj Declaration, Grindyzer fully understands the Lead Plaintiff's responsibilities and obligations to the class under the PSLRA, which include acting as a fiduciary for all class members, conferring with counsel regarding litigation strategy and other matters, attending court proceedings, depositions, settlement mediations, and hearings as needed, and reviewing and authorizing the filing of important litigation documents. *See* Blumberg Decl., Ex. C ¶¶ 6-8. Grindyzer is willing, able, and highly motivated to undertake these responsibilities to ensure the efficient and vigorous prosecution of this litigation in order to maximize the recovery of the class. *See id.* ¶ 6.

Grindyzer has further demonstrated its adequacy through its selection of Kessler Topaz to serve as Lead Counsel for the class. As discussed more fully below, Kessler Topaz is highly qualified and experienced in securities class action litigation and has repeatedly demonstrated its

ability to prosecute complex securities class action litigation in an efficient, effective, and professional manner. *See infra* Argument, Section III.

In sum, Grindyzer has demonstrated its willingness and commitment to supervise Lead Counsel and obtain the best possible recovery for the class.

**III.    THE COURT SHOULD APPROVE GRINDYZER'S SELECTION OF COUNSEL**

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject to the Court's approval. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 276 ("the [PSLRA] evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel selection and counsel retention"). Here, Grindyzer has selected and retained Kessler Topaz to serve as Lead Counsel for the class. Grindyzer's selection of counsel should be approved. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *Cendant*, 264 F.3d at 276.

Kessler Topaz specializes in prosecuting complex class action litigation and is one of the leading law firms in its field. *See* Blumberg Decl., Ex. E (Firm Profile of Kessler Topaz). The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors and has obtained record recoveries in those cases, including: *In re Tyco International, Ltd. Securities Litigation*, No. 02-md-1335 (PB) (D.N.H.) ($3.2 billion recovery); *In re Bank of America Corp. Securities, Derivative, & Employee Retirement Income Security Act (ERISA) Litigation*, No. 09-md-2058 (PKC) (S.D.N.Y.) ($2.425 billion recovery); *In re Wachovia Preferred Securities & Bond/Notes Litigation*, No. 09-cv-6351 (RJS) (S.D.N.Y.) ($627 million recovery); and *In re Lehman Bros. Equity/Debt Securities Litigation*, No. 08-cv-5523 (LAK) (S.D.N.Y.) ($615 million recovery). Additionally, Kessler Topaz is currently serving as lead or co-lead counsel in several high-profile securities class actions across the country, and in this District, including: *In re Humana Inc. Securities Litigation*, No. 1:24-cv-00655-JLH (D. Del.) (Hall, J.); *In re NVIDIA Corp. Sec. Litig.*, No. 18-cv-7669 (HSG)

(N.D. Cal.); *SEB Investment Management AB v. Wells Fargo & Co.*, No. 22-cv-3811 (TLT) (N.D. Cal.); *Sjunde AP-Fonden v. Goldman Sachs Group, Inc.*, No. 18-cv-12084 (VSB) (S.D.N.Y.); and *Sjunde AP-Fonden v. General Electric Co.*, No. 17-cv-8457 (JMF) (S.D.N.Y.) ($362.5 million settlement pending court approval). Kessler Topaz's commitment to zealous representation is also evident from its trial experience under the PSLRA. Specifically, the firm obtained a rare jury verdict in the class's favor after a week-long trial held in 2014 in *In re Longtop Financial Technologies Ltd. Securities Litigation*, No. 11-cv-3658 (SAS) (S.D.N.Y.)—one of just thirteen securities class actions at the time to reach a verdict since enactment of the PSLRA in 1995 (based on post-enactment conduct). The firm also obtained the largest damage award at the time in Delaware Chancery Court history following a trial before Chancellor Leo E. Strine, Jr. *See In re S. Peru Copper Corp. S'holder Derivative Litig.*, No. 961-CS (Del. Ch.), *aff'd Ams. Mining Corp. v. Theriault*, 51 A.3d 1213, 1262-63 (Del. 2012) (affirming final judgment, with interest, of $2 billion).

Finally, Kessler Topaz has already demonstrated its commitment to the prosecution of the Related Actions and to the protection of the class's interests through, among other things, its thorough pre-suit investigation into Defendants' conduct and its analysis of the merits of potential claims here. This investigation resulted in Kessler Topaz filing the *Carretta* Action, the first-filed complaint. Thus, the Court may be assured that, in the event this motion is granted, the class will receive the highest caliber of legal representation available. Accordingly, Grindyzer's selection of Lead Counsel should be approved.

## CONCLUSION

For the reasons stated herein, Grindyzer respectfully requests that the Court: (1) consolidate the Related Actions; (2) appoint Grindyzer as Lead Plaintiff; (3) approve its selection of Kessler

Topaz as Lead Counsel for the class; and (4) grant such other and further relief as the Court may deem just and proper.

DATED:  March 24, 2025

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Gregory V. Varallo*
Gregory V. Varallo (DE Bar ID #2242)
Andrew Blumberg (DE Bar ID #6744)
500 Delaware Avenue, Suite 901
Wilmington, DE 19801
Telephone: (302) 364-3600
greg.varallo@blbglaw.com
andrew.blumberg@blbglaw.com

*Liaison Counsel for Proposed Lead Plaintiff Grindyzer Inc.*

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Naumon A. Amjed (DE Bar ID #4481)
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
rdegnan@ktmc.com

*Counsel for Proposed Lead Plaintiff Grindyzer Inc. and Proposed Lead Counsel for the Class*