**UNITED STATES DISTRICT COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL ANTHONY CARRETTA, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:25-cv-00096-JLH |
| Plaintiff, | |
| v. | |
| CROCS, INC., ANDREW REES, ANNE MEHLMAN, and SUSAN HEALY, | |
| Defendants. | |
| NEIL SHAH, Individually and on Behalf of All Others Similarly Situated, | Case No. 1:25-cv-00356-UNA |
| Plaintiff, | |
| v. | |
| CROCS, INC., ANDREW REES, ANNE MEHLMAN, and SUSAN HEALY, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF NEIL SHAH AND RICHARD LUNN FOR CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

## PRELIMINARY STATEMENT

Neil Shah and Richard Lunn ("Shah and Lunn") respectfully move this Court for consolidation of the above captioned related actions pursuant to Rule 42(a) of the Federal Rules of Civil Procedure, for appointment as Lead Plaintiff pursuant to Section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and for approval of their selection of counsel on behalf of a putative class of purchasers of Crocs, Inc. securities (as defined below).

The PSLRA provides that the Court shall appoint the "most adequate plaintiff" as lead plaintiff, and provides a presumption that the person with the largest financial interest in the relief sought by the class who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure is the "most adequate plaintiff."

Shah and Lunn believe that they are the "most adequate plaintiff" as defined by the PSLRA and should be appointed as lead plaintiff based on their financial losses suffered as a result of Defendants' wrongful conduct as alleged in this action. In addition, for purposes of this motion, Shah and Lunn satisfy the relevant requirements of Rule 23 of the Federal Rules of Civil Procedure, as their claims are typical of other class members' claims, and they are committed to fairly and adequately representing the interests of the class. Thus, pursuant to the PSLRA's lead plaintiff provision, Shah and Lunn respectfully submit that they are presumptively the most adequate plaintiff and should be appointed as lead plaintiff for the class.

Additionally, Shah and Lunn's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel and Bielli & Klauder, LLC ("B&K") as Liaison Counsel for the class should be approved because GPM has substantial expertise in securities class action litigation and the experience and resources to efficiently prosecute this action.

1

## I.    FACTUAL BACKGROUND

This is a class action on behalf of all persons and entities who purchased or otherwise acquired Crocs, Inc. ("Crocs" or the "Company") common stock or call options between November 3, 2022, and October 28, 2024, inclusive (the "Class Period")

Crocs is a casual lifestyle footwear brand. In February 2022, Crocs completed its acquisition of HEYDUDE, a footwear brand focusing on casual, comfortable, and lightweight footwear. As is relevant here, the Company reports HEYDUDE sales in two segments: direct-to-consumer ("DTC") sales; and wholesale sales (which include sales to major retailers). Despite the fact that HEYDUDE was only acquired by Crocs in mid-February 2022, HEYDUDE accounted for approximately 25% of the Company's total revenues in 2022.

The complaint filed in this action alleges that throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) the nature and sustainability of HEYDUDE's revenue growth by concealing that 2022 revenue growth was driven, in large part, by the Company's efforts to stock third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE; (2) that as the Company's retail partners began to destock this excess inventory, waning product demand further negatively impacted the Company's financial results; and (3) that, as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis.

On April 27, 2023, Crocs revealed that much of HEYDUDE's revenue growth in 2022 was attributable to efforts to stock the Company's wholesale partners with HEYDUDE products and was not necessarily indicative of actual downstream retail sales.

2

On this news, Crocs' stock price fell $23.46, or 15.9%, to close at $124.32 per share on April 27, 2023, thereby injuring investors.

Then, on June 7, 2023, the Company revealed that over half of HEYDUDE's third quarter 2022 wholesale revenue was the result of efforts to stock HEYDUDE products with Crocs' major retailers.

On this news, Crocs' stock price fell $4.52, or 3.7%, to close at $116.57 per share on June 8, 2023.

Then, on July 27, 2023, Crocs admitted that its deliberate overstocking accounted for approximately $220 million of HEYDUDE's $896 million in revenue for the period directly following the closing of the acquisition. The Company also announced that it was reducing HEYDUDE's revenue growth guidance for the remainder of 2023.

On this news, Crocs' stock price fell $17.50, or 14.6%, to close at $102.30 per share on July 27, 2023.

On August 16, 2023, Williams Trading LLC ("Williams Trading") significantly decreased its price target on Crocs from $145 per share, to $113 per share, due to information its primary Crocs analyst had uncovered as a result of his discussions with several HEYDUDE wholesale accounts regarding wholesaler inventory levels and the pricing for HEYDUDE products. Among other things, Williams Trading highlighted elevated HEYDUDE inventory levels at approved retailers and the "overabundance" of HEYDUDE products on Amazon.com at below suggested retail price.

On this news, the Company's stock price fell $3.79 per share, or 3.9%, from a close of $97.80 per share on August 15, 2023, to close at $94.01 per share on August 16, 2023.

On November 2, 2023, Crocs announced its financial results for the third quarter of 2023, and revealed that HEYDUDE's "[w]holesale revenues declined 19.4% to $146.5 million following prior year pipeline fill and as our wholesale partners were more cautious on at-once orders." As a result of the prior overstocking of HEYDUDE's products, Crocs further slashed its 2023 HEYDUDE revenue growth guidance from between 14% and 18%, to between only 4% and 6% (even though HEYDUDE DTC sales continued to grow 14.6% during the quarter). In connection with this announcement, Chief Executive Officer Andrew Rees admitted that HEYDUDE "inventory was too high" and that the Company "is proactively lowering in-channel inventories" and "working with our strategic accounts to clean up that inventory and putting them in a strong sell-through and a more profitable position."

On this news, the Company's stock price fell $4.62 per share, or 5.3%, from a close of $87.41 per share on November 1, 2023, to close at $82.79 per share on November 2, 2023.

On April 16, 2024, the Company announced its separation from Rick Blackshaw, Executive Vice President and Brand President for HEYDUDE.

On this news, the Company's stock price fell $2.68 per share, or 2.2%, from a close of $123.36 per share on April 15, 2024, to close at $120.68 per share on April 16, 2024.

Then, on October 29, 2024, the Company hosted an earnings call, during which Rees disclosed that HEYDUDE revenues fell below the Company's expectations and revealed that "HEYDUDE's recent performance and the current operating environment are signaling it will take longer than we had initially planned for the business to turn the corner." Rees attributed HEYDUDE's struggles to "excess inventories in the market" and admitted that "we've made good progress, but frankly, not quite all the progress we want to make" in resolving the inventory issue. Moreover, Rees admitted that "if you think about this sort of [20]22 into [20]23 timeframe, in

4

retrospect, we absolutely shipped too much product[],” calling that decision “wrong” and highlighting that a lack of product demand exacerbated the issue.

On this news, the Company’s stock price fell $26.47 per share, or 19.2%, from a close of $138.05 per share on October 28, 2024, to close at $111.58 per share on October 29, 2024.

As a result of Defendants’ wrongful acts and omissions, and the precipitous decline in the market value of the Company’s securities, Shah and Lunn and other class members have suffered significant losses and damages.

## II.   PROCEDURAL BACKGROUND

On January 22, 2025, Plaintiff Michael Anthony Carretta commenced a class action lawsuit in this District against Crocs and certain of its officers, captioned *Carretta v. Crocs, Inc., et al.*, Case No. 1:25-cv-00096-JLH (the “*Carretta* Action”). The *Carretta* was filed on behalf of all persons and entities that purchased or otherwise acquired Crocs common stock between November 3, 2022, and October, 28 2024, inclusive.

On March 21, 2025, Plaintiff Neil Shah commenced a second substantially identical action against Crocs in this District captioned *Shah v. Crocs, Inc., et al.*, Case No. 1:25-cv-00356 (the “*Shah* Action,” and together with the *Carretta* Action, the “Related Actions”). The *Shah* action expanded the class definition to include investors that purchased call options.

## III.   ARGUMENT

### A.   The Related Actions Should Be Consolidated

Consolidation pursuant to Federal Rule of Civil Procedure 42(a) is proper when actions involve common questions of law and fact.

Each of the Related Actions presents similar factual and legal issues, as they all involve the same subject matter and present the same legal conclusions. Each action alleges violations of the Exchange Act, each presents the same or similar theories for recovery and each is based on the

same allegedly wrongful course of conduct. Because these actions arise from the same facts and circumstances and involve the same subject matter, consolidation of these cases under Federal Rule of Civil Procedure 42(a) is appropriate. *See Dutton v. Harris Stratex Networks, Inc.*, No. 08-cv-755, 2009 WL 1598408, at *1 (D. Del. August 5, 2009) (consolidating actions where they "involve the same Defendants" and "involve[] nearly identical allegations regarding materially false and misleading statements").

### B.    Shah and Lunn Should Be Appointed Lead Plaintiff

The PSLRA provides the procedure for selecting a lead plaintiff in class actions brought under the federal securities laws. The PSLRA directs courts to consider any motion to serve as lead plaintiff filed by class members in response to a published notice of class action by the later of (i) 90 days after the date of publication of the notice; or (ii) as soon as practicable after the Court decides any pending motion to consolidate. 15 U.S.C. § 78u-4(a)(3)(B). The PSLRA provides a "rebuttable presumption" that the "most adequate plaintiff"—*i.e.*, the plaintiff most capable of adequately representing the interests of the class—is the class member that:

> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption in favor of appointing a movant as lead plaintiff may be rebutted only upon proof "by a purported member of the plaintiff class" that the presumptively most adequate plaintiff:

> (aa) will not fairly and adequately protect the interest of the class; or
>
> (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class.

6

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Shah and Lunn satisfy all of the PSLRA criteria and have complied with all of the PSLRA's requirements to be appointed lead plaintiff. Shah and Lunn have, to the best of their knowledge, the largest financial interest in this litigation and meets the relevant requirements of Rule 23. In addition, Shah and Lunn are not aware of any unique defenses Defendants could raise against them that would render them inadequate to represent the class. Accordingly, Shah and Lunn respectfully submit that they should be appointed lead plaintiff.

### 1.    Shah and Lunn Filed a Timely Motion

On January 22, 2025, pursuant to Section 21D(a)(3)(A)(i) of the Exchange Act, notice was published in connection with this action. *See* Declaration of Ryan M. Ernst ("Ernst Decl."), Ex. A. Therefore, Shah and Lunn had sixty days (*i.e.*, until March 24, 2025) to file a motion to be appointed as Lead Plaintiff. As purchasers of Crocs common stock and call options during the Class Period, Shah and Lunn are a member of the proposed class and have timely filed a motion for appointment as lead plaintiff within sixty days of the notice, in compliance with the PSLRA. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa).

Additionally, as set forth in their PSLRA certifications, Shah and Lunn attests that they have reviewed the complaints, adopt the allegations therein, and are willing to serve as a representatives of the class. *See* Ernst Decl., Ex. B. Accordingly, Shah and Lunn satisfy the first PSLRA requirement to be appointed lead plaintiff.

### 2.    Shah and Lunn Have the Largest Financial Interest

The PSLRA requires a court adopt the rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). At the time of this filing, Shah and Lunn

believes that they have the largest financial interest among class members who filed timely applications for appointment as lead plaintiff and is presumed to be the "most adequate plaintiff."

Shah and Lunn purchased Crocs common stock and call options during the Class Period at prices alleged to be artificially inflated by Defendants' misstatements and omissions and, as a result, suffered financial harm of approximately $28,769.50 ($3,713.50 on stock and $25,056.00 on call options). *See* Ernst Decl., Ex. C. To the best of their knowledge, Shah and Lunn are not aware of any other class member that has filed a motion for appointment as lead plaintiff who claims a larger financial interest. As such, Shah and Lunn believe they have the "largest financial interest in the relief sought by the class," and thus satisfy the second PSLRA requirement to be appointed as lead plaintiff for the class.

### 3. Shah and Lunn Satisfy the Requirements of Rule 23 of the Federal Rules of Civil Procedure

The PSLRA further provides that in addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See In re Cendant Corp. Litig.*, 264 F.3d 201, 263 (3d Cir. 2001). Rule 23(a) generally provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

Fed. R. Civ. P. 23(a).

In making its determination that a lead plaintiff candidate otherwise satisfies the requirements of Rule 23, the relevant inquiry is whether the movant has made a *prima facie* showing of typicality and adequacy. *See Wigginton v. Advance Auto Parts, Inc.*, No. 18-cv-212, 2018 WL 5729733, at *4 (D. Del. Nov. 2, 2018).

### a) Shah and Lunn's Claims Are Typical

The Rule 23(a) typicality requirement is satisfied when a plaintiff's claims arise from the same event, practice or course of conduct that gives rise to other class members' claims, and plaintiff's claims are based on the same legal theory. *See In re Merck & Co., Inc. Sec.*, No. 05-cv-1151, 2013 WL 396117, at *5 (D.N.J. Jan. 30, 2013). Rule 23 does not require the lead plaintiff to be identically situated with all class members. *Id.* at *7; *see also Wigginton*, 2018 WL 5729733, at *4.

Shah and Lunn's claims are typical of the claims asserted by the proposed class. Like all members of the class, Shah and Lunn allege that Defendants' material misstatements and omissions concerning Crocs' business, operations, and financial prospects violated the federal securities laws. Shah and Lunn, like all members of the class, purchased Crocs common stock or call options in reliance on Defendants' alleged misstatements and omissions and was damaged thereby. Accordingly, Shah and Lunn's interests and claims are "typical" of the interests and claims of the class.

### b) Shah and Lunn Are Adequate Representatives

The adequacy requirement is satisfied where: (1) class counsel is qualified, experienced, and generally able to conduct the litigation; (2) there is no conflict between the proposed lead plaintiff and the members of the class; and (3) the proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure vigorous advocacy. *See Wigginton*, 2018 WL 5729733, at *4; *see also In re Pharmaprint, Inc. Sec. Litig.*, No. 00-cv-00061, 2002 WL 31056813, at *6 (D.N.J. Apr. 17, 2002).

Shah and Lunn have demonstrated their adequacy by retaining competent and experienced counsel with the resources and expertise to efficiently prosecute this action, and their financial losses ensure that they have sufficient incentive to provide vigorous advocacy. *See* Ernst Decl.,

9

Ex. C. Shah and Lunn are also not aware of any conflict between their claims and those asserted on behalf of the class. Shah and Lunn have also submitted a joint declaration herewith attesting to their adequacy. *See* Ernst Decl., Ex. D. As such, Shah and Lunn are well-equipped to represent the class and should be appointed as lead plaintiff.

### C. The Court Should Approve Lead Plaintiff's Choice of Counsel

The PSLRA vests authority in the lead plaintiff to select and retain counsel, subject only to approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v). The PSLRA "evidences a strong presumption in favor of approving a properly-selected lead plaintiff's decisions as to counsel." *Wigginton*, 2018 WL 5729733, at *6 (quoting *Cendant*, 264 F.3d at 276). Here, Shah and Lunn have selected GPM as lead counsel and B&K as liaison counsel. GPM has successfully prosecuted numerous securities class actions on behalf of injured investors. As reflected by the firm's résumé, *see* Ernst Decl., Ex. E, the Court may be assured that in the event this motion is granted, the members of the class will receive the highest caliber of legal representation. Accordingly, the Court should approve Shah and Lunn's selection of counsel.

## IV.    CONCLUSION

For the foregoing reasons, Shah and Lunn respectfully request that the Court grant their Motion and enter an Order: (1) consolidating the Related Actions (2) appointing Shah and Lunn as lead plaintiff; (3) approving Shah and Lunn's selection of GPM as lead counsel and B&K as liaison counsel for the class; and (4) granting such other relief as the Court may deem just and proper.

DATED: March 24, 2025        **BIELLI & KLAUDER, LLC**

By: */s/ Ryan M. Ernst*
Ryan M. Ernst (ID No. 4788)
1204 N. King Street
Wilmington, DE 19801
Telephone: (302) 803-4600
Email: rernst@bk-legal.com

**GLANCY PRONGAY & MURRAY LLP**
Robert V. Prongay
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Email: rprongay@glancylaw.com
         clinehan@glancylaw.com

*Counsel for Lead Plaintiff Movant Neil Shah and Richard Lunn and Proposed Lead Counsel for the Class*