**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL ANTHONY CARRETTA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CROCS, INC., ANDREW REES, ANNE MEHLMAN, and SUSAN HEALY,<br><br>Defendants. | C.A. No.  1:25-cv-00096-JLH<br><br>Hon. Judge Jennifer L. Hall<br><br><u>CLASS ACTION</u> |
| NEIL SHAH, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CROCS, INC., ANDREW REES, ANNE MEHLMAN, and SUSAN HEALY,<br><br>Defendants. | C.A. No.  1:25-cv-00356-UNA |

**OPENING BRIEF IN SUPPORT OF JOHN D. BURGESS'S MOTION FOR
CONSOLIDATION OF RELATED ACTIONS, APPOINTMENT AS LEAD
PLAINTIFF, AND APPROVAL OF LEAD COUNSEL**

**DELEEUW LAW LLC**
P. Bradford deLeeuw
1301 Walnut Green Road
Wilmington, DE 19807
Telephone: (302) 274-2180
Facsimile: (302) 351-6905
brad@deleeuwlaw.com

March 24, 2025

(*Counsel cont. on next page*)

OF COUNSEL:

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................... 1

NATURE AND STAGE OF PROCEEDINGS .............................................................. 3

SUMMARY OF THE ARGUMENT ............................................................................. 3

STATEMENT OF FACTS ............................................................................................. 4

ARGUMENT .................................................................................................................. 9

    I.      THE RELATED ACTIONS SHOULD BE CONSOLIDATED ........................... 9

    II.     BURGESS SHOULD BE APPOINTED LEAD PLAINTIFF ............................ 11

         A.    Burgess Is Willing to Serve as a Class Representative ............................. 12

         B.    Burgess Is the Most Adequate Plaintiff under the PSLRA ....................... 12

              1.    Burgess Has the "Largest Financial Interest" in the Related
                    Actions ........................................................................................ 12

              2.    Burgess Otherwise Satisfies the Requirements of Rule 23 ........... 13

    III.    LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED
          ......................................................................................................................... 16

CONCLUSION ............................................................................................................. 17

## <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                   **Page(s)**

*Carretta v. Crocs, Inc. et al,*
 No. 1:25-cv-00096 ........................................................................................... *passim*

*City of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.,*
 No. 08-969, 2009 WL 1811067 (D. Del. June 18, 2009) ..................................13, 14

*Clair v. DeLuca,*
 232 F.R.D. 219 (W.D. Pa. 2005) ........................................................................13

*Ellerman Lines, Ltd. v. All. & Gulf Stevedores, Inc.,*
 339 F.2d 673 (3d Cir. 1964)................................................................................10

*Freeman v. Musk,*
 324 F.R.D. 73 (D. Del. 2018) .............................................................................10

*In re Cendant Corp. Litig.,*
 264 F.3d 201 (3d Cir. 2001)......................................................................13, 14, 15

*In re Comverse Technology, Inc. Securities Litigation,*
 No. 1:06-cv-01825 (E.D.N.Y.) ...........................................................................16

*In re Molson Coors Brewing Co. Sec. Litig.,*
 233 F.R.D. 147 (D. Del. 2005) ...........................................................................16

*Klein v. Altria Group, Inc. et al,*
 No. 3:20-cv-00075 (E.D. Va.) .............................................................................16

*Lax v. First Merchants Acceptance Corp,*
 No. 97 C 2715, 1997 WL 461036 (N.D. Ill. Aug. 6, 1997)...............................12, 13

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.,*
 63 F. Supp. 3d 394 (D. Del. 2014)......................................................................14, 15

*Roofers' Pension Fund v. Papa,*
 No. 2:16-cv-02805 (D.N.J.) ................................................................................16

*Rubenstahl v. Philip Morris Int'l, Inc.,*
 No. 17-13504 (ES) (MAH), 2019 WL 585429 (D.N.J. Feb. 13, 2019)................13

*Shah v. Crocs, Inc. et al,*
 No. 1:25-cv-00356 ........................................................................................... *passim*

*Soto v. Hensler,*
 235 F. Supp. 3d 607 (D. Del. 2017).....................................................................10

*Stires v. Eco Science Solutions, Inc.*,
    Nos. 17-3707, 2018 WL 5784817 (D.N.J. Feb. 13, 2018)......................................................10

*Vandevelde v. China Natural Gas, Inc.*,
    277 F.R.D. 126 (D. Del. 2011) ...........................................................................................13

*Wigginton v. Advance Auto Parts, Inc.*,
    No. 18-212 (MN), 2018 WL 5729733 (D. Del. Nov. 2, 2018)..............................................13

**Statutes**

15. U.S.C. § 78j(b)....................................................................................................................1

15 U.S.C. § 78u-4 ........................................................................................................ *passim*

15 U.S.C. § 78u-4(a)(3)  ............................................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(A)(i)(II)...............................................................................................11

15 U.S.C. § 78u-4(a)(3)(B)...............................................................................................11, 12

15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii) ............................................................................... *passim*

15 U.S.C. § 78u-4(a)(3)(B)(iii).................................................................................................12

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).............................................................................................2

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc) ...............................................................................11

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)............................................................................................16

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa) .....................................................................................16

15 U.S.C. § 78u-4(a)(3)(B)(v) .................................................................................................16

Private Securities Litigation Reform Act of 1995 ............................................................ *passim*

Securities Exchange Act of 1934.................................................................................... *passim*

**Rules and Regulations**

17 C.F.R. § 240.10b-5..............................................................................................................2

Fed. R. Civ. P. 23 .......................................................................................................... *passim*

Fed. R. Civ. P. 42.......................................................................................................... *passim*

John D. Burgess ("Burgess") respectfully submits this Opening Brief in support of his motion, pursuant to Section 21D(a)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78u-4(a)(3), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), and Federal Rule of Civil Procedure 42: (1) consolidating the above-captioned related actions (the "Related Actions"); (2) appointing Burgess as Lead Plaintiff on behalf of a class (the "Class") consisting of all persons or entities other than the above-captioned defendants ("Defendants") that purchased or otherwise acquired Crocs, Inc. ("Crocs" or the "Company") common stock or call options between November 3, 2022, and October 28, 2024, inclusive (the "Class Period"); and (3) approving proposed Lead Plaintiff Burgess's selection of Pomerantz LLP ("Pomerantz") as Lead Counsel and deLeeuw Law LLC ("deLeeuw Law") as Liaison Counsel for the Class.[1]

## PRELIMINARY STATEMENT

The complaints in the Related Actions allege that Defendants defrauded investors who purchased or otherwise acquired Crocs common stock or call options during the Class Period in violation of Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b), 78t(a)), and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5 promulgated thereunder (17 C.F.R. § 240.10b-5), by misrepresenting Crocs's business and operations. *See generally Carretta*

---

[1] On January 22, 2025, the first-filed of the Related Actions was filed in this Court, styled *Carretta v. Crocs, Inc. et al,* No. 1:25-cv-00096 (the "*Carretta* Action"), on behalf of a class including all persons and entities who purchased or otherwise acquired Crocs common stock during the Class Period. *See Carretta* Action D.I. No. 1 (the "*Carretta* Complaint") ¶ 1. Then, on March 21, 2025, the second-filed of the Related Actions was filed in this Court, styled *Shah v. Crocs, Inc. et al,* No. 1:25-cv-00356 (the "*Shah* Action"), alleging substantially the same wrongdoing as the *Carretta* Action against the same defendants, on behalf of a class including all persons and entities who purchased or otherwise acquired Crocs common stock or call options during the Class Period. *See Shah* Action, D.I. No. 1 (the "*Shah* Complaint") ¶ 1. Therefore, to avoid excluding any potential class members, this motion has adopted the broader class definition alleged in the *Shah* Action.

1

Complaint; *Shah* Complaint.   Crocs investors, including Burgess, incurred significant losses arising from a series of disclosures between April 27, 2023 and October 29, 2024 concerning the revenue growth of HEYDUDE, a footwear brand acquired by the Company in February 2022.  *See Carretta* Complaint ¶¶ 2-21; *Shah* Complaint ¶¶ 2-21.

Consolidation is appropriate under Fed. R. Civ. P. 42(a) where actions involve common questions of law or fact.   Here, the Related Actions are both putative class actions alleging violations of the federal securities laws by the same Defendants occurring during the same Class Period arising from the same alleged fraudulent misconduct.  As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

Under the PSLRA, the Court is to appoint as lead plaintiff the movant with the largest financial interest in the outcome of the action and that satisfies the requirements of Fed. R. Civ. P. 23.   15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).   Burgess believes he should benefit from a rebuttable presumption arising from his having the largest financial interest.   Burgess incurred losses of approximately $10,008 in connection with his Class Period purchases of Crocs common stock. *See* Declaration of P. Bradford deLeeuw in Support of Motion ("deLeeuw Decl."), Exhibit ("Ex.") A.

Beyond his significant financial interest, Burgess also meets the Rule 23 requirements because his claims are typical of absent class members and because he will fairly and adequately represent the Class's interests.

To fulfill his lead plaintiff responsibilities and vigorously prosecute the Related Actions on behalf of the Class, Burgess has selected Pomerantz as Lead Counsel.  Pomerantz is a nationally-recognized securities class action firm that has recovered billions of dollars on behalf of defrauded investors.   In 2018 alone, Pomerantz secured a recovery of $3 billion on behalf of Petrobras

investors, the fifth largest class action settlement ever achieved in the United States. Based in New York, Pomerantz has offices in Chicago, Los Angeles, Paris, France, London, U.K., and Tel Aviv, Israel.

Based on his being the "most adequate plaintiff," his significant financial interest, his satisfaction of Rule 23 requirements, and his commitment to overseeing the Related Actions, Burgess respectfully requests that the Court enter an order consolidating the Related Actions, appointing him as Lead Plaintiff, and approving Pomerantz as Lead Counsel and deLeeuw Law as Liaison Counsel for the Class.

## NATURE AND STAGE OF PROCEEDINGS

The Complaints filed in the Related Actions assert claims against Defendants under Sections 10(b) and 20(a) of the Exchange Act on behalf of all persons who purchased Crocs common stock or call options during the Class Period. The Related Actions are in the preliminary stages of litigation and, pursuant to the PSLRA, require appointment of a Lead Plaintiff and Lead Counsel.

## SUMMARY OF THE ARGUMENT

1.      Consolidation is appropriate under Fed. R. Civ. P. 42(a) where actions involve common questions of law or fact. Here, the Related Actions are both putative class actions alleging violations of the federal securities laws by the same Defendants occurring during the same Class Period arising from the same alleged fraudulent misconduct. As such, the Related Actions involve common questions of both law *and* fact, and consolidation is plainly warranted.

2.      The PSLRA requires district courts to appoint the "most adequate plaintiff" as Lead Plaintiff. *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Burgess respectfully submits that he is the "most adequate plaintiff" under the PSLRA and should be appointed as Lead Plaintiff because he: (1) timely filed a motion; (2) to the best of his knowledge, has the largest financial interest in the relief

3

sought by the Class; and (3) will fairly and adequately represent the interests of the Class. *See id.* § 78u-4(a)(3)(B)(iii)(I).

3.    The PSLRA also provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." *Id.* § 78u-4(a)(3)(B)(v). Accordingly, Burgess respectfully requests that the Court approve his selection of Pomerantz as Lead Counsel and deLeeuw Law as Liaison Counsel for the Class.

## STATEMENT OF FACTS

Crocs, a Delaware corporation with its principal executive offices in Broomfield, Colorado, is a casual lifestyle footwear brand. *Carretta* Complaint ¶ 2; *Shah* Complaint ¶ 2. Crocs's common stock trades on The Nasdaq Global Select Market under the ticker symbol "CROX." *Id.*

In February 2022, Crocs completed its acquisition of HEYDUDE, a footwear brand focusing on casual, comfortable, and lightweight footwear. *Carretta* Complaint ¶ 3; *Shah* Complaint ¶ 3. As is relevant here, the Company reports HEYDUDE sales in two segments: direct-to-consumer ("DTC") sales; and wholesale sales (which include sales to major retailers). *Id.* Despite the fact that HEYDUDE was only acquired by Crocs in mid-February 2022, HEYDUDE accounted for approximately 25% of the Company's total revenues in 2022. *Id.*

During the Class Period, Defendants misled investors by concealing the fact that the strong revenue growth exhibited by the Company's HEYDUDE brand following its acquisition in February 2022, was largely driven by a conscious decision on the part of Crocs management to aggressively stock its third-party wholesaler pipeline with HEYDUDE products, regardless of the level of retail demand being experienced by those wholesalers. *Carretta* Complaint ¶ 4; *Shah* Complaint ¶ 4. Defendants pursued this overstocking strategy despite assurances to investors by Defendant Andrew Rees ("Rees"), the Company's Chief Executive Officer, that Crocs would not "play the game of forcing inventory into [wholesalers] and getting them overstocked." *Id.* As a

4

result, unbeknownst to investors, the Company reported HEYDUDE revenue numbers in 2022 that were not indicative of actual retail demand for HEYDUDE shoes and, over the longer term, were entirely unsustainable. *Id.* Moreover, after the Company's retail partners began to destock this excess inventory, Defendants further misled investors by concealing that waning product demand for HEYDUDE shoes would further impact the Company's financial results. *Id.*

Investors began to learn the truth about the nature and unsustainability of HEYDUDE's revenue growth on April 27, 2023, when Defendant Rees revealed during the Company's first quarter 2023 earnings call that much of HEYDUDE's revenue growth in 2022 was attributable to efforts to stock the Company's wholesale partners with HEYDUDE products and was not necessarily indicative of actual downstream retail sales. *Carretta* Complaint ¶ 5; *Shah* Complaint ¶ 5.

On this news, the price of Crocs common stock declined $23.46 per share, or nearly 16%, from a close of $147.78 per share on April 26, 2023, to close at $124.32 per share on April 27, 2023. *Carretta* Complaint ¶ 6; *Shah* Complaint ¶ 6.

On June 7, 2023, at an industry conference held by Robert W. Baird & Co. Incorporated, Defendant Rees provided additional detail regarding HEYDUDE's purported growth, explicitly informing investors that HEYDUDE's revenue growth was generated, in large part, by the Company's effort to stock HEYDUDE products with Crocs's major retailers. *Carretta* Complaint ¶ 7; *Shah* Complaint ¶ 7. Specifically, Defendant Rees stated that these wholesale stocking efforts accounted for $70 million in revenue in the second quarter of 2022 (out of $162.5 million in HEYDUDE wholesale revenues) and $60 million in revenue in the third quarter of 2022 (out of $181.8 million in HEYDUDE wholesale revenues). *Id.* Additionally, Defendant Rees revealed that Crocs had intentionally made significant sales to the Company's major retail and wholesale

partners, rather than gradually increasing third-party HEYDUDE inventory over several years to reflect actual retail demand for the product. *Id.* These statements flatly contradicted Defendant Rees' earlier assertions that Crocs would not overstock its wholesalers. *Id.*

On this news, the price of Crocs common stock declined $4.52 per share, or nearly 4%, from a close of $121.09 per share on June 7, 2023, to close at $116.57 per share on June 8, 2023. *Carretta* Complaint ¶ 8; *Shah* Complaint ¶ 8.

On July 27, 2023, Defendant Rees admitted that Crocs's deliberate overstocking accounted for approximately $220 million of HEYDUDE's $896 million in revenue for the period following the closing of the acquisition on February 17, 2022. *Carretta* Complaint ¶ 9; *Shah* Complaint ¶ 9. Defendant Anne Mehlman, the Company's Chief Financial Officer at the time, also announced that Crocs was reducing HEYDUDE's revenue growth guidance for the remainder of fiscal 2023, to a range between 14% and 18%—substantially lower than previous guidance revenue growth in the mid-20s—effectively acknowledging that much of HEYDUDE's purported growth was based upon Defendants' decision to overstock wholesalers. *Id.*

On this news, the price of Crocs common stock declined $17.50 per share, or nearly 15%, from a close of $119.80 per share on July 26, 2023, to close at $102.30 per share on July 27, 2023. *Carretta* Complaint ¶ 10; *Shah* Complaint ¶ 10.

On August 16, 2023, Williams Trading LLC ("Williams Trading") significantly decreased its price target on Crocs from $145 per share, to $113 per share, due to information its primary Crocs analyst had uncovered as a result of his discussions with several HEYDUDE wholesale accounts regarding wholesaler inventory levels and the pricing for HEYDUDE products. *Carretta* Complaint ¶ 11; *Shah* Complaint ¶ 11. Among other things, Williams Trading highlighted elevated

6

HEYDUDE inventory levels at approved retailers and the "overabundance" of HEYDUDE products on Amazon.com at below suggested retail price. *Id.*

On this news, the price of Crocs common stock declined $3.79 per share, or nearly 4%, from a close of $97.80 per share on August 15, 2023, to close at $94.01 per share on August 16, 2023. *Carretta* Complaint ¶ 12; *Shah* Complaint ¶ 12.

On November 2, 2023, Crocs announced its financial results for the third quarter of 2023, and revealed that HEYDUDE's "[w]holesale revenues declined 19.4% to $146.5 million following prior year pipeline fill and as our wholesale partners were more cautious on at-once orders." *Carretta* Complaint ¶ 13; *Shah* Complaint ¶ 13. As a result of the prior overstocking of HEYDUDE's products, Crocs further slashed its 2023 HEYDUDE revenue growth guidance from between 14% and 18%, to between only 4% and 6% (even though HEYDUDE DTC sales continued to grow 14.6% during the quarter). *Id.* In connection with this announcement, Defendant Rees admitted that HEYDUDE "inventory was too high" and that the Company "is proactively lowering in-channel inventories" and "working with our strategic accounts to clean up that inventory and putting them in a strong sell-through and a more profitable position." *Id.*

On this news, the price of Crocs common stock declined $4.62 per share, or more than 5%, from a close of $87.41 per share on November 1, 2023, to close at $82.79 per share on November 2, 2023. *Carretta* Complaint ¶ 14; *Shah* Complaint ¶ 14.

Throughout the remainder of the Class Period, Defendants continued to downplay the impact of the Company's overstocking of third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE. *Carretta* Complaint ¶ 15; *Shah* Complaint ¶ 15. After the Company's retail partners began to destock this excess inventory, Defendants further misled investors by concealing that waning product demand would significantly exacerbate the negative

impact on the Company's financial results. *Id.* For example, during the Company's earnings call discussing its fourth quarter and full year 2023 results on February 15, 2024, Defendant Rees proclaimed that, based on third-party data, the "HEYDUDE brand during 2023 gained [substantial] market share in the fashion casual category." *Id.* Further, in discussing the excess inventory issue, Defendant Rees reassured investors that Crocs had "gone through the process of cleaning up our account base because [of] . . . too much inventory," adding further that its "strategic partners . . . are really bullish on the brand." *Id.*

On April 16, 2024, the Company announced its separation from Rick Blackshaw, Executive Vice President and Brand President for HEYDUDE. *Carretta* Complaint ¶ 16; *Shah* Complaint ¶ 16.

On this news, the price of Crocs common stock declined $2.68 per share, or approximately 2.2%, from a close of $123.36 per share on April 15, 2024, to close at $120.68 per share on April 16, 2024. *Carretta* Complaint ¶ 17; *Shah* Complaint ¶ 17.

Then, on October 29, 2024, investors learned more about HEYDUDE's prospects when the Company reported its financial results for the third quarter of 2024. *Carretta* Complaint ¶ 18; *Shah* Complaint ¶ 18. During the accompanying earnings call, Defendant Rees disclosed that HEYDUDE revenues fell below the Company's expectations and revealed that "HEYDUDE's recent performance and the current operating environment are signaling it will take longer than we had initially planned for the business to turn the corner." *Id.* Rees attributed HEYDUDE's struggles to "excess inventories in the market" and admitted that "we've made good progress, but frankly, not quite all the progress we want to make" in resolving the inventory issue. *Id.* Moreover, Rees admitted that "if you think about this sort of [20]22 into [20]23 timeframe, in retrospect, we

8

absolutely shipped too much product[]," calling that decision "wrong" and highlighting that a lack of product demand exacerbated the issue. *Id.*

On this news, the price of Crocs common stock declined $26.47 per share, or approximately 19.2%, from a close of $138.05 per share on October 28, 2024, to close at $111.58 per share on October 29, 2024. *Carretta* Complaint ¶ 19; *Shah* Complaint ¶ 19.

This complaints in the Related Actions allege that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. *Carretta* Complaint ¶ 20; *Shah* Complaint ¶ 20. Specifically, Defendants misrepresented and/or failed to disclose: (1) the nature and sustainability of HEYDUDE's revenue growth by concealing that 2022 revenue growth was driven, in large part, by the Company's efforts to stock third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE; (2) that as the Company's retail partners began to destock this excess inventory, waning product demand further negatively impacted the Company's financial results; and (3) that, as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis. *Id.*

As a result of Defendants' wrongful acts and omissions, and the significant decline in the market value of the Company's securities when the truth was revealed, Burgess and other members of the Class have suffered significant damages.

**ARGUMENT**

**I.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED**

Consolidation of related cases is appropriate where, as here, the actions involve common questions of law and fact, and therefore consolidation would avoid unnecessary cost, delay, and overlap in adjudication: "If actions before the court involve a common question of law or fact, the

9

court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a); *see also Manual for Complex Litigation (Third)* § 20.123 (1995).

Consolidation is appropriate when the actions before the court involve common questions of law *or* fact. *See* Fed. R. Civ. P. 42(a); *Freeman v. Musk*, 324 F.R.D. 73, 78 (D. Del. 2018) ("The Court has broad authority to consolidate actions for trial involving common questions of law or fact if, in its discretion, it finds that such consolidation would 'facilitate the administration of justice.'" (quoting *Ellerman Lines, Ltd. v. All. & Gulf Stevedores, Inc.*, 339 F.2d 673, 675 (3d Cir. 1964))).

The Related Actions at issue here clearly involve common questions of law *and* fact. Each action was brought against Crocs and certain Crocs senior officers and directors, in connection with violations of the federal securities laws. *See Carretta* Complaint ¶¶ 1, 27-30; *Shah* Complaint ¶¶ 1, 27-30. Accordingly, the Related Actions allege substantially the same wrongdoing—namely that the Defendants issued materially false and misleading statements and omissions that artificially inflated the price of Crocs's securities and subsequently damaged the Class members when Crocs's stock price plunged as the truth emerged. *See Carretta* Complaint ¶¶ 1-21; *Shah* Complaint ¶¶ 1-21. Consolidation of the Related Actions is therefore appropriate. *See Soto v. Hensler*, 235 F. Supp. 3d 607, 613 (D. Del. 2017) (ordering consolidation of related securities class actions, finding "no dispute that both cases involve common questions of law and fact"); *Stires v. Eco Science Solutions, Inc.*, Nos. 17-3707 (RMB/KMW), 2018 WL 5784817, at *2-3 (D.N.J. Feb. 13, 2018) (same).

10

## II.  BURGESS SHOULD BE APPOINTED LEAD PLAINTIFF

Motions by proposed lead plaintiffs must be filed within 60 days of the publication of notice of the action.  *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II).  In this case, the notice of the *Carretta* Action was published on January 22, 2025.  *See* deLeeuw Decl., Ex. B.  The PSLRA directs courts to consider any such motion by the later of (i) 90 days after the date of publication, or (ii) as soon as practicable after the Court decides any pending motion to consolidate.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i) & (ii).  Burgess's instant motion is thus timely and must be considered.

When faced with competing lead plaintiff motions, under 15 U.S.C. § 78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter . . . the 'most adequate plaintiff')."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i).  Burgess is the "most adequate plaintiff" within the PSLRA's meaning and should therefore be appointed as Lead Plaintiff.

To guide this determination, the PSLRA creates a rebuttable presumption that the "most adequate plaintiff" "is the person or group of persons that" (i) either filed the complaint or made a lead plaintiff motion; (ii) "in the determination of the court, has the largest financial interest in the relief sought by the class"; and (iii) otherwise satisfies the requirements of Fed. R. Civ. P. 23.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa)-(cc).  Burgess readily satisfies all three of these criteria and thus believes he is entitled to the rebuttable presumption that he is the most adequate plaintiff under the PSLRA.

For all these reasons, as detailed below, Burgess respectfully urges the Court to appoint him to serve as Lead Plaintiff overseeing the Related Actions.

11

**A.      Burgess Is Willing to Serve as a Class Representative**

On January 22, 2025, counsel for plaintiff in the *Carretta* Action caused a notice to be published over *PRNewswire* pursuant to PSLRA Section 21D(a)(3)(A)(i) ("Notice"), announcing that litigation had been filed against Defendants and advising investors in Crocs securities that they had until March 24, 2025—*i.e.*, 60 days—to file a motion to be appointed as lead plaintiff. *See* deLeeuw Decl., Ex. B.  Burgess filed the instant motion pursuant to the Notice and attached a Certification signed by him attesting that he is willing to serve as a Class representative and to provide testimony at deposition and trial if necessary.  *See id.*, Ex. C.  Accordingly, Burgess satisfies the first requirement to serve as Lead Plaintiff for the Class.

**B.      Burgess Is the Most Adequate Plaintiff under the PSLRA**

When faced with competing lead plaintiff motions, under 15 U.S.C. § 78u-4(a)(3)(B), the Court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members (hereinafter … the 'most adequate plaintiff')."  *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). Burgess is the "most adequate plaintiff" within the PSLRA's meaning and should thus be appointed Lead Plaintiff.

**1.      Burgess Has the "Largest Financial Interest" in the Related Actions**

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . in the determination of the court, has the largest financial interest in the relief sought by the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii).  To the best of his knowledge, Burgess has the largest financial interest of any Crocs investor seeking to serve as Lead Plaintiff.  For claims arising under Exchange Act § 10(b), courts frequently assess financial interest based upon the four factors articulated in the seminal case *Lax v. First Merchants Acceptance Corp.*: (1) the number of shares purchased during the class period; (2) the number of

12

net shares purchased during the class period (also referred to as "retained shares"); (3) the total net funds expended during the class period; and (4) the approximate losses suffered. No. 97 C 2715, 1997 WL 461036, at *5 (N.D. Ill. Aug. 6, 1997). In accord with courts nationwide, these so-called *Lax* factors have been expressly adopted by courts in the Third Circuit, and implicitly by courts in this Judicial District. *See, e.g.*, *Clair v. DeLuca*, 232 F.R.D. 219, 227 (W.D. Pa. 2005) (expressly adopting *Lax* factors in assessing financial interest); *Rubenstahl v. Philip Morris Int'l, Inc.*, No. 17-13504 (ES) (MAH), 2019 WL 585429, at *2 (D.N.J. Feb. 13, 2019) (same) (citing *In re Cendant Corp. Litig.*, 264 F.3d 201, 262 (3d Cir. 2001)); *Wigginton v. Advance Auto Parts, Inc.*, No. 18-212 (MN), 2018 WL 5729733, at *3 (D. Del. Nov. 2, 2018) (in determining financial interest, "the Court 'should consider, among other things [. . .] the approximate losses suffered by the plaintiffs'" (quoting *Cendant*, 264 F.3d at 262)).

During the Class Period, Burgess: (1) purchased 375 shares of Crocs common stock; (2) expended $50,051 on his purchases of Crocs common stock; (3) retained 375 of his shares of Crocs common stock; and (4) incurred losses of approximately $10,008 in connection with his transactions in Crocs common stock. *See* deLeeuw Decl., Ex. A. Burgess thus believes he has the largest financial interest among any potential lead plaintiff movants in the Related Actions, thereby entitling him to a rebuttable presumption that he is the "most adequate plaintiff" within the PSLRA's meaning (15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb)), given that he also satisfies the Fed. R. Civ. P. 23 requirements.

### 2. Burgess Otherwise Satisfies the Requirements of Rule 23

For a lead plaintiff movant to secure the PSLRA's rebuttable presumption that he is the "most adequate plaintiff," he must also demonstrate that he "otherwise satisfies the requirements of Rule 23." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). A *prima facie* showing suffices for this determination. *Vandevelde v. China Natural Gas, Inc.*, 277 F.R.D. 126, 132 (D. Del. 2011); *City*

13

*of Roseville Emps.' Ret. Sys. v. Horizon Lines, Inc.*, No. 08-969, 2009 WL 1811067, at *2 (D. Del. June 18, 2009) ("Our inquiry here 'need not be extensive,' and 'institutional investors and others with large losses will, more often than not, satisfy the typicality and adequacy requirements.'" (quoting *Cendant*, 264 F.3d. at 263-65)). Burgess readily pass muster.

Rule 23(a) provides that a class action may proceed if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Rule 23(b)(3) adds that common questions must predominate over any questions affecting only individual class members and that a class action must be superior to other available methods for fairly and efficiently adjudicating the case. *See* Fed. R. Civ. P. 23(b)(3). Here, the complaints in the Related Actions plead Rule 23(a)(1) numerosity, Rule 23(a)(2) common questions, Rule 23(b)(3) predominance, and superiority in a manner common to all lead plaintiff candidates. The sufficiency of these allegations is not upset by any facts uniquely concerning Burgess.

Burgess satisfies the threshold for Rule 23(a)(3) typicality. "For typicality, the court will consider whether the factual claims or legal theories advanced by the movant[] 'are markedly different' from the claims of the class." *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 401 (D. Del. 2014) (quoting *Cendant*, 264 F.3d at 264). Burgess's claims easily meet this standard. Like all Class members, Burgess alleges that: (1) Defendants violated the Exchange Act by knowingly or recklessly making false or misleading statements of material facts and/or omitting to disclose material facts concerning Crocs; (2) Burgess and the Class members purchased Crocs common stock and/or call options during the Class Period at prices inflated by

14

Defendants' misrepresentations or omissions; and (3) Burgess and the Class members were damaged upon the revelation of Defendants' fraud through a series of corrective disclosures that drove Crocs's stock price downward. These shared claims, based on the same legal theories arising from the same underlying facts and course of conduct, demonstrate Burgess's typicality under Rule 23(a)(3).

Burgess also satisfies the Rule 23(a)(4) adequacy requirement. "For adequacy, the court will consider whether movants have 'the ability and incentive' to represent the class 'vigorously,' whether there are any conflicts between the movants and the class, and whether the movants have 'obtained adequate counsel,' including whether selected counsel is competent." *OFI Risk Arbitrages*, 63 F. Supp. 3d at 401 (quoting *Cendant*, 264 F.3d at 265). Burgess has submitted a signed Certification declaring his commitment to protect the Class's interests. *See* deLeeuw Decl., Ex. C. Further demonstrating his adequacy, Burgess has submitted a Declaration attesting to, *inter alia*, his background, his investing experience, his experiencing retaining and/or overseeing counsel, his understanding of the responsibilities of Lead Plaintiffs pursuant to the PSLRA, his decision to seek appointment as Lead Plaintiff, and the steps that he is prepared to take to prosecute this litigation on behalf of the Class. *See* deLeeuw Decl., Ex. D.

Burgess's significant losses from his Class Period trades in Crocs common stock demonstrate a sufficient interest in the litigation's outcome that aligns with the interests of Class members. Burgess has no conflicts of interest or antagonism with the Class he seeks to represent. Finally, in Pomerantz and deLeeuw Law, Burgess has retained qualified and experienced counsel.

Indeed, Burgess has already demonstrated his ability to pursue securities fraud claims through his choice of counsel, Pomerantz. Pomerantz is one of the nation's leading plaintiff-side securities litigation firms, as discussed in greater detail in § III., *infra*. Burgess's and Pomerantz's

willingness and ability to zealously litigate the claims in the Related Actions on behalf of the Class cannot reasonably be questioned.

### III.     LEAD PLAINTIFF'S SELECTION OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in a lead plaintiff to select and retain lead counsel, subject to the approval of the Court. *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *In re Molson Coors Brewing Co. Sec. Litig.*, 233 F.R.D. 147, 150 (D. Del. 2005) ("Once the lead plaintiff is chosen, that party is primarily responsible for selecting lead counsel."). The Court should not interfere with Lead Plaintiff's selection unless it is necessary to do so in order "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Burgess has selected Pomerantz to serve as Lead Counsel for the Class. Pomerantz is a premier firm, highly experienced in the areas of securities litigation and class action lawsuits, which has successfully prosecuted numerous such actions on behalf of investors over its 80+ year history, as detailed in its firm resume. *See* deLeeuw Decl., Ex. E. Pomerantz is based in New York, with offices in Chicago, Los Angeles, Paris, France, London, U.K., and Tel Aviv, Israel. As lead counsel in *In re Petrobras Securities Litigation*, No. 14-cv-09662 (S.D.N.Y.), Pomerantz recently secured a recovery of $3 billion on behalf of Petrobras investors, the largest settlement ever in a class action involving a foreign issuer and the fifth largest class action settlement ever achieved in the United States. Petrobras is part of a long line of record-setting recoveries led by Pomerantz, including the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 1:06-cv-01825 (E.D.N.Y.), in June 2010, and the $90 million settlement in *Klein v. Altria Group, Inc. et al*, No. 3:20-cv-00075 (E.D. Va.) in March 2022. *Id.* In the Third Circuit, Pomerantz recently obtained a $97 million settlement in *Roofers' Pension Fund v. Papa*, No. 2:16-cv-02805 (D.N.J.).

Finally, deLeeuw Law LLC is well qualified to represent the class as Liaison Counsel as the firm's principal, P. Bradford deLeeuw, has substantial experience litigating complex securities class actions.  *See* deLeeuw Decl., Ex. F.

As a result of their extensive experience in litigation involving issues similar to those raised in the Related Actions, Burgess's chosen counsel have the skill, knowledge, expertise, and experience that will enable them to prosecute these actions effectively and expeditiously.  Thus, the Court may be assured that by approving Burgess's chosen counsel, with Pomerantz as Lead Counsel and deLeeuw Law as Liaison Counsel, the Class members will receive the best legal representation available.

## CONCLUSION

For the foregoing reasons, Burgess respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing Burgess as Lead Plaintiff for the Class; and (3) approving his selections of Pomerantz as Lead Counsel and deLeeuw Law as Liaison Counsel for the Class.

Dated:  March 24, 2025

Respectfully submitted,

**DELEEUW LAW LLC**

*/s/ P. Bradford deLeeuw*
P. Bradford deLeeuw
1301 Walnut Green Road
Wilmington, DE 19807
Telephone: (302) 274-2180
Facsimile: (302) 351-6905
brad@deleeuwlaw.com

*Counsel for Lead Plaintiff Movant John D. Burgess
and Proposed Liaison Counsel for the Class*

**POMERANTZ LLP**
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II

17

(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant John D. Burgess
and Proposed Lead Counsel for the Class*

18