**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MICHAEL ANTHONY CARRETTA, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CROCS, INC., ANDREW REES, ANNE MEHLMAN, and SUSAN HEALY,<br><br>Defendants. | Case No.: 25-cv-00096-JLH |

**MEMORANDUM OF LAW IN SUPPORT OF GENE NADLER'S MOTION**
**FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL**
**<u>OF SELECTION OF COUNSEL</u>**

**FARNAN LLP**
Brian E. Farnan (No. 4089)
Michael J. Farnan (Bar No. 5165)
919 North Market Street, 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
Fax: (302) 777-0301
Email: bfarnan@farnanlaw.com
　　　mfarnan@farnanlaw.com

*Liaison Counsel for Gene Nadler and*
*[Proposed] Liaison Counsel for the Class*

**LEVI & KORSINSKY, LLP**
Adam M. Apton
(*pro hac vice* forthcoming)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel. (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Gene Nadler and*
*[Proposed] Lead Counsel for the Class*

Dated: March 24, 2025

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS .................................................................................................... 2

NATURE AND STAGE OF THE PROCEEDINGS ................................................... 7

ARGUMENT .......................................................................................................................... 8

    I.    THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF ...................... 8

        A.   The Procedure Required by the PSLRA ................................................... 8

            1.    Movant is Willing to Serve as Class Representative ......................................... 9

            2.    Movant Has the Requisite Financial Interest in the Relief Sought by the Class ............................................................................................................... 9

        B.   Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure .................................................................................... 10

            1.    Movant's Claims are Typical of the Claims of all the Class Members ............ 11

            2.    Movant Will Adequately Represent the Class ................................................. 12

    II.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED ........................... 13

CONCLUSION ..................................................................................................................... 14

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blake Partners, Inc. v. Orbcomm, Inc.*,
2008 U.S. Dist. LEXIS 43061 (D.N.J. June 2, 2008) ....................................................... 11, 12

*Chao Sun v. Han*,
2015 U.S. Dist. LEXIS 64060 (D.N.J. May 14, 2015) ............................................................ 11

*In re Drexel Burnham Lambert Group*,
960 F.2d 285 (2d Cir. 1992) ..................................................................................................... 12

*Gen. Tel. Co. v. Falcon*,
457 U.S. 147 (1982) .................................................................................................................. 12

*In re Milestone Sci. Sec. Litig.*,
183 F.R.D. 404 (D.N.J. 1998) ............................................................................................ 11, 12

*OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*,
63 F. Supp. 3d 394 (D. Del. 2014) ..................................................................................... 11, 12

*In re Oxford Health Plans, Inc. Sec. Litig.*,
182 F.R.D. 42 (S.D.N.Y. 1998) ................................................................................................ 11

*In re Party City Secs. Litig.*,
189 F.R.D. 91 (D.N.J. 1999) ..................................................................................................... 10

*In re Razorfish, Inc. Secs. Litig.*,
143 F. Supp. 2d 304 (S.D.N.Y. 2001) ........................................................................................ 2

*Robidoux v. Celani*,
987 F.2d 931 (2d Cir. 1993) ..................................................................................................... 11

*Schulman v. Lumenis, Ltd.*,
2003 WL 21415287 (S.D.N.Y June 18, 2003) ........................................................................ 10

*Smith v. Suprema Specialties, Inc.*,
206 F. Supp. 2d 627 (D.N.J. 2002) ............................................................................................. 2

*Soto v. Hensler*,
235 F. Supp. 3d 607 (D. Del. 2017) ............................................................................................ 2

*Vandevelde v. China Nat. Gas, Inc.*,
277 F.R.D. 126 (D. Del. 2011) ............................................................................................. 9, 10

*Weinberg v. Atlas Air Worldwide Holdings, Inc.*,
216 F.R.D. 248 (S.D.N.Y. 2003) ....................................................................................... 10, 11

*Weiss v. York Hosp.*,
   745 F.2d 786 (3d Cir. 1984)........................................................................................... 12

*Weltz v. Freeman*,
   199 F.R.D. 129 (S.D.N.Y. 2001) ............................................................................ 9, 10, 11

**Statutes**

15 U.S.C. § 78u-4 ...................................................................................................... *passim*

**Rules**

Fed. R. Civ. P. 23.................................................................................................... 2, 10, 11

iv

## PRELIMINARY STATEMENT

Presently pending before the Court is the above-captioned action (the "Action") brought on behalf of a class of all persons and entities who purchased or otherwise acquired Crocs, Inc. ("Crocs" or the "Company") common stock between November 3, 2022 and October, 28 2024, inclusive, inclusive (the "Class Period"). The Action alleges violations of the Securities Exchange Act of 1934 (the "Exchange Act") against the Company, Andrew Rees ("Rees"), Anne Mehlman ("Mehlman"), and Susan Healy ("Healy") (collectively, the "Defendants").

Gene Nadler ("Movant") lost approximately $29,961.89 as a result of the alleged fraud during the Class Period. Movant respectfully submits this Memorandum of Law in support of his Motion for: (1) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (2) approval of his selection of Levi & Korsinsky, LLP ("Levi & Korsinsky") as Lead Counsel and Farnan LLP ("Farnan") as Liaison Counsel; and (3) the granting of such other and further relief as the Court may deem just and proper.

Movant believes that he has the largest financial interest in the outcome of the case.[1] As such, Movant meets the requirements of the PSLRA for appointment as lead plaintiff. Moreover, Movant satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his

---

[1] Movant's certification identifying his transactions in shares of Crocs common stock, as required by the PSLRA, as well as a chart identifying his losses are attached to the declaration of Brian E. Farnan ("Farnan Decl."), dated March 24, 2025 as Exhibits A and B, respectively. Movant is responsible for the transactions listed on his certification. He holds an assignment in his favor for the Gene Decedents Tr Murray, Gene Decedents Trust, Harry Decedents Tr Murray, Harry Decedents Trust, Nadler Family Partners I and Nadler Family Trust II accounts.

claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class.[2]

The PSLRA provides for the Court to appoint as lead plaintiff the movant that has the largest financial interest in the litigation and has made *a prima facie* showing that they are an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure. *See In re Razorfish, Inc. Secs. Litig.*, 143 F. Supp. 2d 304, 307 (S.D.N.Y. 2001); *see also Smith v. Suprema Specialties, Inc.*, 206 F. Supp. 2d 627, 632 (D.N.J. 2002); *Soto v. Hensler*, 235 F. Supp. 3d 607, 615 (D. Del. 2017). Movant satisfies these requirements.

## STATEMENT OF FACTS[3]

Crocs, a Delaware corporation with its principal executive offices in Broomfield, Colorado, is a casual lifestyle footwear brand. ¶ 2. The Company's common stock trades on The Nasdaq Global Select Market under the ticker symbol "CROX." *Id.*

This Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts, about the Company's business and operations. ¶ 20. Specifically, Defendants misrepresented and/or failed to disclose: (1) the nature and sustainability of HEYDUDE's revenue growth by concealing that 2022 revenue growth was driven, in large part, by the Company's efforts to stock third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE; (2) that as the

---

[2] The "Class" is comprised of all persons who purchased Crocs common stock during the Class Period. Excluded from the Class are defendants and their families, the current and former officers and directors of the Company, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entity in which defendants have or had a controlling interest.

[3] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Carretta* Complaint") filed in the action styled *Carretta v. Crocs, Inc., et. al.,* Case No. 1:25-cv-00096-JLH (the "*Carretta* Action"). Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Carretta* Complaint. The facts set forth in the *Carretta* Complaint are incorporated herein by reference.

Company's retail partners began to destock this excess inventory, waning product demand further negatively impacted the Company's financial results; and (3) that, as a result, Defendants' representations about the Company's business, operations, and prospects were materially false and misleading and/or lacked a reasonable basis. *Id.*

Defendants misled investors by concealing the fact that the strong revenue growth exhibited by the Company's HEYDUDE brand following its acquisition in February 2022, was largely driven by a conscious decision on the part of Crocs management to aggressively stock its third-party wholesaler pipeline with HEYDUDE products, regardless of the level of retail demand being experienced by those wholesalers. ¶ 4. Defendants pursued this overstocking strategy despite assurances to investors by Defendant Andrew Rees, the Company's Chief Executive Officer, that Crocs would not "play the game of forcing inventory into [wholesalers] and getting them overstocked." *Id.* As a result, unbeknownst to investors, the Company reported HEYDUDE revenue numbers in 2022 that were not indicative of actual retail demand for HEYDUDE shoes and, over the longer term, were entirely unsustainable. Moreover, after the Company's retail partners began to destock this excess inventory, Defendants further misled investors by concealing that waning product demand for HEYDUDE shoes would further impact the Company's financial results. *Id.*

Investors began to learn the truth about the nature and unsustainability of HEYDUDE's revenue growth on April 27, 2023, when Defendant Rees revealed during the Company's first quarter 2023 earnings call that much of HEYDUDE's revenue growth in 2022 was attributable to efforts to stock the Company's wholesale partners with HEYDUDE products and was not necessarily indicative of actual downstream retail sales. ¶ 5.

In response to this disclosure, the price of Crocs common stock dropped nearly 16%, or

3

$23.46 per share, from a close of $147.78 per share on April 26, 2023, to close at $124.32 per share on April 27, 2023. ¶ 6.

On June 7, 2023, at an industry conference held by Robert W. Baird & Co. Incorporated, Defendant Rees provided additional detail regarding HEYDUDE's purported growth, explicitly informing investors that HEYDUDE's revenue growth was generated, in large part, by the Company's effort to stock HEYDUDE products with Crocs's major retailers. ¶ 7. Specifically, Defendant Rees stated that these wholesale stocking efforts accounted for $70 million in revenue in the second quarter of 2022 (out of $162.5 million in HEYDUDE wholesale revenues) and $60 million in revenue in the third quarter of 2022 (out of $181.8 million in HEYDUDE wholesale revenues). *Id.* Furhter, Defendant Rees revealed that Crocs had intentionally made significant sales to the Company's major retail and wholesale partners, rather than gradually increasing third-party HEYDUDE inventory over several years to reflect actual retail demand for the product. *Id.* These statements flatly contradicted Defendant Rees' earlier assertions that Crocs would not overstock its wholesalers. *Id.*

On this news, the price of Crocs common stock declined $4.52 per share, or nearly 4%, from a close on June 7, 2023 of $121.09 per share, to close on June 8, 2023 at $116.57 per share. ¶ 8.

Defendant Rees admitted on July 27, 2023 that Crocs's deliberate overstocking accounted for approximately $220 million of HEYDUDE's $896 million in revenue for the period following the closing of the acquisition on February 17, 2022. ¶ 9. Defendant Anne Mehlman, the Company's Chief Financial Officer at the time, also announced that Crocs was reducing HEYDUDE's revenue growth guidance for the remainder of fiscal 2023, to a range between 14% and 18%—substantially lower than previous guidance revenue growth in the mid-20s—effectively acknowledging that

4

much of HEYDUDE's purported growth was based upon Defendants' decision to overstock wholesalers. *Id.*

As the market digested this news, the price of Crocs common stock fell nearly 15%, or $17.50 per share, from a close of $119.80 per share on July 26, 2023, to close at $102.30 per share on July 27, 2023. ¶ 10.

On August 16, 2023, Williams Trading LLC ("Williams Trading") significantly decreased its price target on Crocs from $145 per share, to $113 per share, due to information its primary Crocs analyst had uncovered as a result of his discussions with several HEYDUDE wholesale accounts regarding wholesaler inventory levels and the pricing for HEYDUDE products. ¶ 11. Williams Trading highlighted, among other things, elevated HEYDUDE inventory levels at approved retailers and the "overabundance" of HEYDUDE products on Amazon.com at below suggested retail price. *Id.*

In response to this news, the price of Crocs common stock declined nearly 4%, or $3.79 per share, from a close on August 15, 2023 of $97.80 per share, to close on August 16, 2023 at $94.01 per share. ¶ 12.

Crocs announced its financial results for the third quarter of 2023 on November 2, 2023, and revealed that HEYDUDE's "[w]holesale revenues declined 19.4% to $146.5 million following prior year pipeline fill and as our wholesale partners were more cautious on at-once orders." ¶ 13. As a result of the prior overstocking of HEYDUDE's products, Crocs further slashed its 2023 HEYDUDE revenue growth guidance from between 14% and 18%, to between only 4% and 6% (even though HEYDUDE DTC sales continued to grow 14.6% during the quarter). *Id.* In connection with this announcement, Defendant Rees admitted that HEYDUDE "inventory was too high" and that the Company "is proactively lowering in-channel inventories" and "working with

5

our strategic accounts to clean up that inventory and putting them in a strong sell-through and a more profitable position." *Id.*

As the market reacted to this news, the price of Crocs common stock fell more than 5%, or $4.62 per share, from a close of $87.41 per share on November 1, 2023, to close at $82.79 per share on November 2, 2023. ¶ 14.

Throughout the remainder of the Class Period, Defendants continued to downplay the impact of the Company's overstocking of third-party wholesalers and retailers following the February 2022 acquisition of HEYDUDE. ¶ 15. After the Company's retail partners began to destock this excess inventory, Defendants further misled investors by concealing that waning product demand would significantly exacerbate the negative impact on the Company's financial results. *Id.* For example, during the Company's earnings call discussing its fourth quarter and full year 2023 results on February 15, 2024, Defendant Rees proclaimed that, based on third-party data, the "HEYDUDE brand during 2023 gained [substantial] market share in the fashion casual category." *Id.* In addition, in discussing the excess inventory issue, Defendant Rees reassured investors that Crocs had "gone through the process of cleaning up our account base because [of] . . . too much inventory," adding further that its "strategic partners . . . are really bullish on the brand." *Id.*

The Company announced on April 16, 2024 its separation from Rick Blackshaw, Executive Vice President and Brand President for HEYDUDE. ¶ 16.

On this news, the price of Crocs common stock declined approximately 2.2%, or $2.68 per share, from a close of $123.36 per share on April 15, 2024, to close at $120.68 per share on April 16, 2024. ¶ 17.

Then, on October 29, 2024, investors learned more about HEYDUDE's prospects when

the Company reported its financial results for the third quarter of 2024. ¶ 18. During the accompanying earnings call, Defendant Rees disclosed that HEYDUDE revenues fell below the Company's expectations and revealed that "HEYDUDE's recent performance and the current operating environment are signaling it will take longer than we had initially planned for the business to turn the corner." *Id.* Rees attributed HEYDUDE's struggles to "excess inventories in the market" and admitted that "we've made good progress, but frankly, not quite all the progress we want to make" in resolving the inventory issue. *Id.* Further, Rees admitted that "if you think about this sort of [20]22 into [20]23 timeframe, in retrospect, we absolutely shipped too much product[]," calling that decision "wrong" and highlighting that a lack of product demand exacerbated the issue. *Id.*

In response to this news, the price of Crocs common stock plummeted approximately 19.2%, or $26.47 per share, from a close of $138.05 per share on October 28, 2024, to close at $111.58 per share on October 29, 2024. ¶ 19.

## **NATURE AND STAGE OF THE PROCEEDINGS**

On January 22, 2025, the *Carretta* Action was filed in this Court against the Defendants. The *Carretta* Action asserts claims pursuant to Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and the rules and regulations promulgated thereunder, including SEC Rule 10b-5, 17 C.F.R. § 240.10b-5, on behalf of the Class who were damaged thereby. The *Carretta* Action is in the preliminary stages of litigation and requires the appointment of a lead plaintiff and lead counsel.

## ARGUMENT

### I.    THE COURT SHOULD APPOINT MOVANT AS LEAD PLAINTIFF

#### A.    The Procedure Required by the PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. § 78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa) has either filed the complaint or made a motion in response to a notice. . .

(bb) in the determination of the Court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii).

The presumption "may be rebutted only upon proof by a purported member of the plaintiff class that the presumptively most adequate plaintiff—

(aa) will not fairly and adequately protect the interest of the class; or

(bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."

8

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that the defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Action.

### 1.    Movant is Willing to Serve as Class Representative

On January 22, 2025, plaintiff's counsel in the first-filed Action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Crocs and which advised putative Class members that they had 60 days to file a motion to seek appointment as a lead plaintiff in the Action.[4] Movant has reviewed a complaint filed in the pending Action and has timely filed his motion pursuant to the Notice.

### 2.    Movant Has the Requisite Financial Interest in the Relief Sought by the Class

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the Action. As demonstrated herein, Movant has the largest known financial interest in the relief sought by the Class. *See* Farnan Decl., Exhibits A and B. The movant with the largest financial interest who also makes *a prima facie* showing of the typicality and adequacy requirements under Rule 23 is presumptively the lead plaintiff. *See Weltz v. Freeman*, 199 F.R.D. 129, 132 (S.D.N.Y. 2001); *Vandevelde v. China Nat. Gas, Inc.*, 277 F.R.D. 126, 132 (D. Del. 2011).

---

[4] The *Carretta* Action was filed in this Court on January 22, 2025. On that same day, the Notice was published over *PRNewswire*, a widely circulated national business-oriented wire service. *See* Farnan Decl., Exhibit C.

During the Class Period, Movant purchased Crocs common stock in reliance upon the materially false and misleading statements issued by the defendants, and was injured thereby. Movant suffered a substantial loss of approximately $29,961.89 as a result. *See* Farnan Decl., Exhibit B. Movant thus has a significant financial interest in the outcome of this case. To the best of his knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

**B.      Movant Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure**

According to 15 U.S.C. § 78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interest of the class.

FED. R. CIV. P. 23.

With respect to the qualifications of a class representative, Rule 23(a) requires generally that representatives' claims be typical of those of the class, and that representatives will fairly and adequately protect the interests of the class. *See Vandevelde*, 277 F.R.D. at 132; *Weinberg v. Atlas Air Worldwide Holdings, Inc.*, 216 F.R.D. 248, 252 (S.D.N.Y. 2003); *Schulman v. Lumenis, Ltd.*, 2003 WL 21415287, at *5-6 (S.D.N.Y June 18, 2003); *Weltz*, 199 F.R.D. at 133 (considering only typicality and adequacy on a motion as lead plaintiff); *see also In re Party City Secs. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999). *See generally* Fed. R. Civ. P. 23(a)(3)-(4). Furthermore, only a

10

"preliminary showing" of typicality and adequacy is required at this stage. *Weinberg*, 216 F.R.D. at 252.

Consequently, in deciding a motion to serve as lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See id.*; *Chao Sun v. Han*, 2015 U.S. Dist. LEXIS 64060, at *6 (D.N.J. May 14, 2015) (limiting analysis to typicality and adequacy and "defer[ring] examination of the remaining requirements until…class certification"); *Blake Partners, Inc. v. Orbcomm, Inc.*, 2008 U.S. Dist. LEXIS 43061, at *19 (D.N.J. June 2, 2008); *Weltz*, 199 F.R.D. at 133; *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

As detailed below, Movant satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as lead plaintiff.

### 1.     Movant's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class." Movant plainly meets the typicality requirement of Rule 23 because: (1) he suffered the same injuries as the absent class members; (2) he suffered as a result of the same course of conduct by the defendants; and (3) his claims are based on the same legal issues. *See Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *OFI Risk Arbitrages v. Cooper Tire & Rubber Co.*, 63 F. Supp. 3d 394, 401 (D. Del. 2014) (typicality satisfied as long as claims are not "markedly different" from circumstances of and theories relied on by the class); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which the other class members' claims and injuries arise"); *see also In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404,

11

414-415 (D.N.J. 1998). Rule 23 does not require that the named plaintiff be identically situated with all class members. It is enough if their situations share a common issue of law or fact. *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984).[5]

In this case, the typicality requirement is met because the Movant's claims are identical to and neither compete nor conflict with the claims of the other Class members. Movant, like the other members of the Class, acquired Crocs common stock during the Class Period at prices artificially inflated by the defendants' materially false and misleading statements, and was damaged thereby. Thus, his claims are typical, if not identical, to those of the other members of the Class because he suffered losses similar to those of other Class members and his losses result from the defendants' common course of wrongful conduct. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Weiss*, 745 F.2d at 809; *see also OFI Risk Arbitrages*, 63 F. Supp. 3d at 401; *In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### 2.    Movant Will Adequately Represent the Class

Moreover, Movant is an adequate representative for the Class. Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B); *see Drexel Burnham*, 960 F.2d at 291; *Blake Partners, Inc.*, 2008 U.S. Dist. LEXIS 43061 at *21; *OFI Risk Arbitrages*, 63 F. Supp. 3d at 401 (adequacy satisfied where movants have incentive to vigorously prosecute claims and have no conflicts with proposed class).

---

[5] Although not relevant for the purposes of this Motion, a finding of typicality frequently supports a finding of commonality. *See Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

Movant's interests are clearly aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movant's interests and those of the Class, but Movant has a significant and compelling interest in prosecuting the Action based on the large financial losses he has suffered as a result of the wrongful conduct alleged in the Action. This motivation, combined with the Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. In addition, Movant has retained counsel highly experienced in prosecuting securities class actions, and will submit his choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v). Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Movant has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). In addition, because Movant has sustained the largest amount of losses from the defendants' alleged wrongdoing, he is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead the Action.

Moreover, Movant considers himself to be a sophisticated investor, having been a retail stock broker until retiring after nearly 40 years in the industry. Movant is also the author of a book about investing, titled *The Perfect Stock Market Diet: One Simple Strategy to Beat Wallstreet Professionals*. Movant holds a degree in history and romance languages from Boston University. Following college, Movant taught and then worked in the garment industry before becoming a stock broker. Therefore, Movant will prosecute the Action vigorously on behalf of the Class.

## II.    MOVANT'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to

13

Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as proposed Lead Counsel for the Class and Farnan as the proposed Liaison Counsel. The members of Levi & Korsinsky and Farnan have extensive experience in successfully prosecuting complex securities class actions such as this one, and are well-qualified to represent the Class. *See* Farnan Decl. Exhibits D, E (the firm résumés of Levi & Korsinsky and Farnan).

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) appoint Movant as Lead Plaintiff for the Class; (2) approve Levi & Korsinsky as Lead Counsel and Farnan as Liaison Counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Dated: March 24, 2025                                         Respectfully Submitted,

                                                             **FARNAN LLP**

                                                             By: */s/ Brian E. Farnan*
                                                             Brian E. Farnan (Bar No. 4089)
                                                             Michael J. Farnan (Bar No. 5165)
                                                             919 North Market Street, 12th Floor
                                                             Wilmington, DE 19801
                                                             Tel: (302) 777-0300
                                                             Fax: (302) 777-0301
                                                             Email: bfarnan@farnanlaw.com
                                                                       mfarnan@farnanlaw.com

                                                             *Liaison Counsel for Gene Nadler and*
                                                             *[Proposed] Lead Counsel for the Class*

14

**LEVI & KORSINSKY, LLP**
Adam M. Apton
(*pro hac vice* forthcoming)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Gene Nadler and*
*[Proposed] Lead Counsel for the Class*

15